981 A.2d 87 (2009)
410 N.J. Super. 190
In the Matter of Anthony DUBOV.
DOCKET NO. A-0832-08T4.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 2009.
Decided October 19, 2009.
*89 Michael H. Nieschmidt, Hightstown, argued the cause for appellant Anthony Dubov.
William P. Fisher, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Joseph L. Bocchini, Jr., Mercer County Prosecutor, attorney; Mr. Fisher, of counsel and on the brief).
Before Judges SKILLMAN, GILROY and SIMONELLI.[1]
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal involves the procedures that govern a trial court's consideration of an appeal from a police chief's denial of an application for a permit to purchase a firearm.
On November 7, 2006, appellant Anthony Dubov applied to the East Windsor Chief of Police for a firearms purchaser identification card and handgun purchase permit. The application listed two references, as required by N.J.S.A. 2C:58-3(e), one of whom was Brian Johnson. In response to a telephone inquiry by a member of the East Windsor Police Department, Johnson allegedly made negative comments concerning appellant's fitness to own a firearm.
On January 15, 2007, the East Windsor Chief of Police sent appellant a letter notifying him that his application has been denied. The letter did not give any reason for the denial. In addition, the Chief did not offer to meet with appellant to discuss the reasons for the denial, as required by Weston v. State, 60 N.J. 36, 43-44, 286 A.2d 43 (1972).
On February 9, 2007, appellant appealed to the Law Division from the denial of his application. Thereafter, a criminal case manager sent appellant a form he was required to complete before the matter would be scheduled.
On the same day the appeal to the Law Division was filed, appellant's counsel sent a letter to the Chief of Police, which requested a statement of reasons for the denial of appellant's application as well as any documents the Chief relied upon in denying the application, a list of witnesses, and the notes and/or transcripts of any interviews of witnesses. As far as the record before us indicates, the Chief of Police did not respond to this discovery request.
Appellant did not submit the required form to the Law Division until November 13, 2007. Appellant's submission included a letter from his counsel, which stated that he had spoken with the Chief of Police, who informed him that the denial of the application had been "based on the lack of cooperation by one of my client's references, as well as the lack of a supportive reference from my client's other reference." Appellant's submission also included the names of two additional references and a report by a psychiatrist, which concluded that appellant "does not suffer from any mental illness on Axis I and that he can be entrusted with the use of a gun in the course of his employment as security officer."
*90 The trial court heard the appeal from the denial of appellant's application on February 28, 2008. However, the court did not hear testimony, as required by Weston, supra, 60 N.J. at 46, 286 A.2d 43, by the appellant, the Chief of Police, police officers who investigated and forwarded reports to the Chief, or other witnesses who furnished information that influenced the denial. Instead, the court considered the appeal based solely on documentary evidence, including letters from two of appellant's references and the report of his psychiatrist. The court also considered factual representations set forth in the County Prosecutor's brief regarding Brian Johnson's negative comments about appellant's fitness to own a gun.
At the end of oral argument on the appeal, the trial court asked the parties whether they would have any objection to the court communicating directly with appellant's former employers regarding his fitness to own a gun. The parties consented to this unusual procedure.
The trial court did not decide this case until six months later. During the intervening period, the prosecutor sent a letter to the court which stated that two persons had approached his office "with information on the applicant's character and repute relevant to his fitness to own a firearm" and requested the court's permission to submit those persons' comments. Appellant's counsel sent a letter to the court objecting to this request. Insofar as the record before us indicates, the trial court did not respond to the prosecutor's request. However, on June 18, 2008, Peter Horne, who is coordinator of the criminal justice program at Mercer County College and taught several classes in which appellant was enrolled, sent the trial court a letter that questioned appellant's psychological stability and recommended the denial of his application for a firearms purchaser permit. The court apparently did not transmit this letter to either of the parties, but nevertheless relied upon it in affirming the denial of appellant's application and appended it to the order reflecting this ruling.
The trial court did not issue any opinion. However, the court's reasons for affirming the denial of appellant's application are set forth in summary form in the order deciding the case, which states in pertinent part:
[T]he matter having been heard on February 28, 2008, and this Court having reviewed all documents subsequently submitted by [appellant] and another independent source, and this Court with consent of all parties as stated on the record on February 28, 2008 having contacted [appellant's] employers listed in [appellant's] counsel's March 5, 2008 letter to the Court, and having spoken to said employers via telephone, and the Court having been advised of information (specifically questionable and threatening behavior by [appellant]) that leads the Court to find that the issuance of a Firearms Purchaser Identification Card to [appellant] would not be in the interest of the public's health, safety, and welfare, pursuant to N.J.S.A. 2C:58-3c(5), and for good cause shown;
It is on this 27th day of August, 2008;
ORDERED that the appeal for a New Jersey Firearms Identification Card and Permit to Purchase a Firearm is hereby DENIED in that several of [appellant's] references, and another source [who] contacted this Court independently (see copy of Dr. Horne's June 18, 2008 letter attached hereto as Exhibit "A") provided a negative response as to [appellant's] fitness to possess a firearm. As a result, this Court finds that the issuance of the requested permits would not be in *91 the interest of the public's health, safety or welfare pursuant to 2C:58-3c(5)....
We conclude that the trial court's conduct of the proceedings on the appeal from the denial of appellant's application for a permit to purchase firearms did not conform with the requirements of procedural due process set forth in Weston. Therefore, the order affirming the denial of that application must be reversed and the matter remanded for a rehearing conducted in conformity with Weston.

I.
Before discussing the procedural deficiencies in the trial court's conduct of the proceedings on the appeal from the denial of appellant's application for a permit to purchase a firearm, we address several of appellant's other arguments.

A.
Appellant argues that N.J.S.A. 2C:58-3(c)(5), which prohibits issuance of a firearms purchaser card or handgun purchase permit if "issuance would not be in the interest of the public health, safety or welfare[,]" is unconstitutionally vague. In Burton v. Sills, 53 N.J. 86, 91, 248 A.2d 521 (1968), appeal dismissed, 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969), the Court rejected a similar challenge to the constitutionality of the predecessor to N.J.S.A. 2C:58-3(c)(5), stating:
The Legislature's goal was to keep guns out of the hands of unfit persons. To that end it disqualified certain classes which quickly come to mind. To guard against inadvertent omissions, it delegated authority to appropriately designated officials to disqualify any unfit individuals who, though not strictly within the enumerated classes, should not in the public interest be entrusted with firearms. To guard against arbitrary official action the Legislature directed early determination and provided for easy appeal to the county court.... Review from the county court is readily available in the Appellate Division and, when necessary, in this Court. As has been pointed out elsewhere, these safeguards are probably of greater significance than further details in the statutory standard.
[Citations omitted.]
Appellant suggests that the Supreme Court of the United States' decision in District of Columbia v. Heller, ___ U.S. ___, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), requires reconsideration of the constitutionality of N.J.S.A. 2C:58-3(c)(5). However, Heller did not involve a claim that a firearms licensing statute was void for vagueness. The issue in Heller was whether the Second Amendment protects only the right to possess and carry a firearm in connection with military service or also protects an individual's right to possess a firearm for other purposes such as self-defense and hunting. Id. at ___, 128 S.Ct. at 2789, 171 L.Ed.2d at 648. The Court held that the Second Amendment protects an individual right to keep and bear firearms, id. at ___, 128 S.Ct. at 2799, 171 L.Ed.2d at 659, and that this holding required invalidation of District of Columbia statutes that totally prohibited handgun possession in the home and required any lawful firearm in the home to be disassembled or bound by a trigger lock, thus rendering it inoperable. Id. at ___, 128 S.Ct. at 2817-22, 171 L.Ed.2d at 678, 679-84.
However, the Court expressly indicated that its holding did not require invalidation of statutes that require a license to purchase or possess a firearm. Id. at ___, ___, 128 S.Ct. at 2816-17, 2819, 171 L.Ed.2d at 678, 680-81. In fact, the Court noted that "[r]espondent conceded at oral *92 argument that he does not `have a problem with ... licensing' and that the District's law is permissible so long as it is `not enforced in an arbitrary and capricious manner[,]'" thus obviating the need for the Court to address the validity of the specific provisions of the District of Columbia's gun licensing statutes. Id. at ___, 128 S.Ct. at 2819, 171 L.Ed.2d at 681. Therefore, Heller has no impact upon the constitutionality of N.J.S.A. 2C:58-3(c)(5).

B.
Appellant argues that he is entitled to a permit to purchase a firearm because the trial court failed to conduct a hearing on the denial of his application within the statutorily required time. Appellant relies upon the part of N.J.S.A. 2C:58-3(d) which provides that when an applicant requests a hearing to challenge the denial of a firearms purchaser permit, "[t]he hearing shall be held and a record made thereof within 30 days of the receipt of the application for such hearing."
Appellant submitted a request for a hearing on February 9, 2007, but the hearing was not held until more than a year later, on February 28, 2008. The Prosecutor argues that appellant did not perfect his request for a hearing until November 13, 2007, when he submitted the form the criminal case manager sent him at the time he filed his request for a hearing. However, even if a hearing could not be scheduled until that form was submitted, the hearing was not conducted until three-and-a-half months after submission of this form, which was far beyond the thirty-day period allowed by N.J.S.A. 2C:58-3(d). Furthermore, the trial court did not issue an order affirming the denial of appellant's application until six months after the hearing. Therefore, it is clear that appellant did not obtain the prompt disposition of his appeal contemplated by N.J.S.A. 2C:58-3(d).
Nevertheless, this does not mean appellant is entitled to automatic approval of his application without showing that he complies with the statutory requirements for purchasing a firearm. The Legislature has provided for automatic approval of an application for a permit or other governmental approval based on a public official's failure to act within the time provided by statute only in certain limited circumstances. See, e.g., N.J.S.A. 40:55D-73(b) (providing that failure of Board of Adjustment to render a decision within the time allowed by the Municipal Land Use Law "shall constitute a decision favorable to the applicant"); N.J.S.A. 52:14B-10(c) (providing that failure of agency head to render a final decision within the time allowed by the Administrative Procedure Act will result in an Administrative Law Judge's initial decision being deemed the final decision of the agency). N.J.S.A. 2C:58-3(d) does not include any comparable provision for automatic approval of an application for a permit to purchase a firearm based on the failure of a court clerk or judge to schedule a hearing within thirty days of the request for hearing.
Moreover, we do not believe the Legislature could have intended that a person who is unfit to own a firearm would be able to obtain a firearms purchaser permit based on such an automatic approval. Our gun control laws have the purpose of "keeping firearms out of the hands of all dangerously unfit persons, noncriminal as well as criminal." Burton v. Sills, supra, 53 N.J. at 94, 248 A.2d 521; see also Heller, supra, ___ U.S. at ___, 128 S.Ct. at 2816-17, 171 L.Ed.2d at 678 (noting that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill"). This salutary purpose *93 would be seriously undermined if a person could obtain a permit to purchase a firearm based solely on a court's failure to conduct a hearing within the thirty-day period required by N.J.S.A. 2C:58-3(d).
In Adler v. Livak, 308 N.J.Super. 219, 222-25, 705 A.2d 1218 (App.Div.1998), we rejected an argument similar to the one advanced by appellantnamely, that an applicant for a gun purchaser permit was automatically entitled to approval because the chief of police did not act upon the application within thirty days, as required by N.J.S.A. 2C:58-3(f), due to his inability to obtain a fingerprint check on the applicant within that period. In reaching this conclusion, we observed that "[u]ndoubtedly, the statutory deadline was prompted by a desire to avoid dilatory consideration of the application[,][b]ut the consequences of automatic approval of a permit at the expiration of the thirty day period would be visited on the public for whose protection the statute was enacted." Id. at 224, 705 A.2d 1218. Similarly, we conclude that appellant is not entitled to automatic approval of his application simply because the court failed to hear his appeal within the thirty-day period provided by N.J.S.A. 2C:58-3(d).

II.
We turn now to the primary issue presented by this appeal, which is whether the hearing conducted by the Law Division conformed with the essential requirements of procedural due process. Those requirements were set forth in Weston. The Court first noted that the initial decision on an application for a firearms purchaser permit is made by the local chief of police ex parte, without significant participation by the applicant:
The function of the Police Chief as the local administrative official charged with responsibility for the original decision to grant or withhold the firearms purchaser identification card involves largely the exercise of an informal discretion. Both his investigation of the application and his decision are made ex parte (except for the conference referred to above which the Chief should hold with the applicant in the future in instances where he decides to deny the application).... The finality of that decision considered in the light of (1) the absence of any meaningful participation by the interested party in the process by which it is reached, and (2) the mandate of the statute that the applicant should receive the identification card "unless good cause for the denial appears," invests the Chief's action with a quasi-judicial patina or informal adjudicatory character.
[60 N.J. at 45, 286 A.2d 43.]
The Court concluded that the informality of a chief of police's initial consideration of an application for a gun permit requires an evidentiary hearing when an applicant appeals a denial to the County Court (now the Law Division):
So viewed, it follows that the basic justice aimed at by the Legislature in expressly providing for judicial review, can be achieved fairly only by a de novo hearing in the County Court. De novo in this context contemplates introduction of relevant and material testimony and the application of an independent judgment to the testimony by the reviewing court. Such a judicial review compensates constitutionally for procedural deficiencies before the administrative official.
[Ibid. (citations omitted).]
The Court described in detail the procedures that must be followed in such a hearing:

*94 At the outset of the County Court hearing ... orderly and logical procedure calls for introduction through the testimony of the applicant of his application for the identification card, the rejection thereof and the reasons given by the Chief, if any. At this point he may be subjected to cross-examination by counsel for the Chief. Thereafter, the Chief should proceed with the evidence on which his denial was predicated. Ordinarily, this would include presentation of his own testimony, that of the members of the police department who made the investigation and furnished reports to the Chief, any available lay or professional persons who furnished information which influenced the action taken by the Chief, and any admissible documentary evidence which played a part in the adverse decision. Upon completion of the Chief's proof, the applicant may offer relevant rebuttal testimony.
[Id. at 46, 286 A.2d 43.]
The hearing conducted by the trial court patently failed to conform with the procedures set forth in Weston.[2] The court did not require testimony by the applicant, the Chief of Police, members of the police department who investigated the application on behalf of the Chief, or other persons who furnished information that influenced the denial. Instead, the court decided the appeal based solely on documentary evidence. Moreover, much of that evidence was submitted in a form that would not be competent even if the court were allowed to decide the appeal without taking testimony. For example, evidence of the negative response furnished by appellant's reference, Brian Johnson, was not submitted in the form of a certification by Johnson or even a certification by the member of the East Windsor Police Department who interviewed Johnson, but was instead presented simply as a representation in the Prosecutor's brief.
The trial court compounded its error in failing to conduct an evidentiary hearing by undertaking its own investigation of appellant's fitness to own a firearm through ex parte communications with appellant's former employers. In addition to soliciting oral evidence ex parte, the court also considered written evidence submitted ex parte in the form of a letter by one of appellant's former teachers commenting negatively upon his fitness to own a firearm.
Rule 1:2-1 requires [a]ll trials, hearings of motions and other applications... [to] be conducted in open court[.] Compliance with this requirement is mandated by the "due process requirements of *95 the Fourteenth Amendment." Pressler, Current N.J. Court Rules, comment 1 on R. 1:2-1 (2010). Consequently, except in unusual circumstances, a trial court should not communicate ex parte with a party or witness, even with the parties' consent. See In re Yaccarino, 101 N.J. 342, 385, 502 A.2d 3 (1985). Moreover, in a circumstance where such a communication may be justifiable or occurs accidentally, the court must promptly place the contents of the communication on the record and afford the parties an opportunity to seek recusal or other appropriate relief. See Pressler, supra, comment 1 on R. 1:2-1.
Therefore, the trial court should not have undertaken to conduct its own investigation of appellant's fitness to own a gun by communicating directly with appellant's former employers, nor should the court have considered the letter submitted ex parte after the hearing on the appeal. Indeed, the Court in Weston indicated that one of the reasons a trial court is required to conduct an evidentiary hearing on an appeal from the denial of a firearms purchaser permit is that the police chief's initial decision is "made ex parte [,]" and thus the "introduction of relevant and material testimony" in a judicial proceeding "compensates constitutionally for procedural deficiencies [in the proceeding] before the administrative official." 60 N.J. at 45, 286 A.2d 43. A judicial proceeding in which a trial court obtains evidence ex parte in the same manner as a chief of police obviously does not compensate for the procedural deficiencies in the chief's initial consideration of an application.
Weston recognizes that the usual rules of evidence barring hearsay testimony are not controlling in an appeal from the denial of an application for a gun purchaser permit. 60 N.J. at 50-53, 286 A.2d 43. Thus, evidence that ordinarily would be excludable as hearsay may be admissible in such a proceeding if it is "of a credible characterof the type which responsible persons are accustomed to rely upon in the conduct of their serious affairs." Id. at 51, 286 A.2d 43. However, a decision in such an appeal "cannot be based upon hearsay alone." Ibid. "[T]here must be a residuum of legal and competent evidence in the record to support it." Ibid.
As in Weston, "the denial of [appellant's] application at both the administrative and judicial level was based entirely upon hearsay evidence." Id. at 52, 286 A.2d 43. Therefore, the affirmance of that denial must be reversed and the case remanded for an evidentiary hearing conducted in accordance with the procedures set forth in Weston.
We of course do not preclude the Police Chief from introducing hearsay evidence on the remand. We only reiterate the Court's directive in Weston that the Chief's evidence in support of the denial of a gun purchaser permit "[o]rdinarily ... would include presentation of his own testimony, that of the members of the police department who made the investigation and furnished reports to the Chief, any available lay or professional person who furnished information which influenced the action taken by the Chief, and any admissible documentary evidence which played a part in the adverse decision." 60 N.J. at 46, 286 A.2d 43. We also do not undertake to prescribe what weight the trial court may give to any hearsay introduced in conformity with the principles set forth in Weston.
Accordingly, the trial court's affirmance of the Police Chief's denial of appellant's application for a firearms purchase permit is reversed, and the case is remanded for an evidentiary hearing in conformity with this opinion.
NOTES
[1] Judge Simonelli did not hear oral argument. However, with the parties' consent, she has participated in the decision.
[2] The East Windsor Police Chief's initial consideration of appellant's application also failed to comply with the procedures set forth in Weston. The Court directed that "[i]f [the Police Chief] upon completion of the investigation... decides to deny the application, ... an opportunity should be given to the applicant to discuss the matter with the Chief, to be informed of the reasons for the denial and to offer any pertinent explanation or information for the purpose of meeting the objections being raised." 60 N.J. at 43-44, 286 A.2d 43. The evident purpose of these requirements is not only to inform the applicant of the reasons for the police chief's denial, but also to afford the applicant an opportunity to convince the chief, by submission of additional information and informal discussion, to change his decision, thus obviating the need for judicial review. The East Windsor Police Chief failed to inform appellant of the reasons for his denial or to discuss those reasons with him informally, as required by Weston. However, appellant has now been informed of the reasons through his counsel's discussions with the Chief and the prosecutor's submission to the trial court. Moreover, this case has proceeded past the point where there is any likelihood of informal resolution. Therefore, no purpose would be served at this late date in requiring the Police Chief to comply with the procedures set forth in Weston.