**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4775-16T1

IN THE MATTER OF THE APPEAL
OF THE DENIAL OF KENNETH
ERICKSON, JR.'S APPLICATION
FOR A FIREARMS PURCHASER
IDENTIFICATION CARD (FPIC)
AND HANDGUN PURCHASE PERMIT
(HPP).

_____

Submitted July 3, 2018 — Decided August 14, 2018

Before Judges O'Connor and Moynihan.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County.

Evan F. Nappen, Attorney at Law, PC, attorneys
for appellant Kenneth Erickson, Jr. (Evan F.
Nappen, on the brief).

Dennis Calo, Acting Bergen County Prosecutor,
attorney for respondent State of New Jersey
(Jenny X. Zhang, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

PER CURIAM

Appellant Kenneth Erickson, Jr., appeals from an order
denying his application for a firearms purchaser identification
card (FPIC) and handgun purchase permit (HPP), arguing:

[POINT I]

THE COURT BELOW ERRED BY BASING ITS DECISION UPON HEARSAY CONTRARY TO DUBOV,[1] WESTON[2] AND ONE MARLIN RIFLE.[3]

[POINT II]

THE COURT BELOW ERRED IN FINDING THAT THE APPELLANT IS A THREAT TO THE PUBLIC HEALTH, SAFETY, OR WELFARE, HAD A MENTAL HEALTH DISQUALIFIER AND FALSIFIED HIS APPLICATION.

[POINT III]

APPELLANT SHOULD NOT BE DENIED HIS FUNDAMENTAL, INDIVIDUAL, CONSTITUTIONAL RIGHT TO KEEP ARMS FOR A REASON THAT DOES NOT RISE ABOVE RATIONAL BASIS, IS VAGUE AND/OR OVERBROAD, CONSTITUTES AN UNCONSTITUTIONAL BALANCING-TEST, AND DOES NOT PROVIDE A DUE PROCESS FORM OF REDRESS.

We determine that sufficient, competent evidence supported the trial court's decision and affirm.

In considering Erickson's appeal, the judge listed the documentary evidence he weighed: Erickson's FPIC application; a written statement from Erickson to the Haworth Police Department; letters from Erickson's treating psychiatrist, Lorraine Chiorazzi, M.D., and therapist, Marcia Stamberg, L.C.S.W. to the former Haworth police chief; the denial letter from the Haworth police

---

[1] In re Dubov, 410 N.J. Super. 190 (App. Div. 2009).

[2] Weston v. State, 60 N.J. 36 (1972).

[3] State v. One Marlin Rifle, 319 N.J. Super. 359 (App. Div. 1999).

2                                                          A-4775-16T1

chief; a 1980 permit to purchase a handgun; and a signed consent form — introduced into evidence by Erickson — to obtain his mental health records. The judge also considered testimony from Detective Alex Yannuzzi, Dr. Chiorazzi and Erickson.

The judge denied Erickson's appeal, determining he was disqualified under N.J.S.A. 2C:58-3(c)(3)[4] and -(5)[5] because he falsified his application by answering "no" to questions 24 and 26, and the issuance of a permit or FPIC would not be in the interest of the public health, safety or welfare given Erickson's mental health history.

We are bound to accept the trial court's fact findings if they are supported by substantial credible evidence, In re Return

---

[4] N.J.S.A. 2C:58-3(c)(3), provides in pertinent part, that no HPP or FPIC shall be issued

> [t]o any person who suffers from a physical
> defect or disease which would make it unsafe
> for him to handle firearms, to any person who
> has ever been confined for a mental disorder
> . . . unless any of the foregoing persons
> produces a certificate of a medical doctor or
> psychiatrist licensed in New Jersey, or other
> satisfactory proof, that he is no longer
> suffering from that particular disability in
> a manner that would interfere with or handicap
> him in the handling of firearms; to any person
> who knowingly falsifies any information on the
> application form for a [HPP] or [FPIC].

[5] N.J.S.A. 2C:58-3(c)(5) prohibits the issuance of such documents to "any person where the issuance would not be in the interest of the public health, safety or welfare."

of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997); "[d]eference to a trial court's fact-finding is especially appropriate when the evidence is largely testimonial and involves questions of credibility," id. at 117. We exercise de novo review of the trial court's legal determinations, Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Contrary to Erickson's contention, we are satisfied the judge's findings were not solely based on hearsay evidence. The evidence upon which a final administrative agency decision is reached may include hearsay evidence, provided the agency's findings are not entirely based upon hearsay evidence. Weston v. State, 60 N.J. 36, 50-52 (1972). Evidence that ordinarily would be excludable as hearsay may be admissible in a gun permit hearing if it is "of a credible character -- of the type which responsible persons are accustomed to rely upon in the conduct of their serious affairs." Id. at 51; see also In re Dubov, 410 N.J. Super. 190, 202 (App. Div. 2009).

For a court to sustain an administrative decision, findings must be supported by a residuum of legally competent evidence. Weston, 60 N.J. at 51; see also In re Toth, 175 N.J. Super. 254, 262 (App. Div. 1980). "The residuum rule does not require that each fact be based on a residuum of legally competent evidence but rather focuses on the ultimate finding or findings of material

4

fact." Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 359 (2013).

Yannuzzi — who conducted the background investigation regarding the application — testified Erickson answered "no" to question 26 on his application and, after initially leaving question 24 blank, answered "no" to that question at a meeting between Yannuzzi and Erickson to clarify the omission. In doing so, Erickson denied being "confined or committed to a mental institution or hospital for treatment or observation of a mental or psychiatric condition on a temporary, interim, or permanent basis," and being "attended, treated or observed by any doctor or psychiatrist or at any hospital or mental institution on an inpatient or outpatient basis for any mental or psychiatric condition."[6]

The judge determined these were false answers based upon his review of: the application; Yannuzzi's testimony — found credible by the judge — regarding his interaction with Erickson about question 24; and evidence that proved Erickson was brought to the Bergen Regional Medical Center (BRMC) on October 4, 2014, where

_____

[6] We quote questions 24 and 26, respectively, of the "Application for Firearms Purchaser Identification Card and/or Handgun Purchase Permit."

he received mental health treatment prior to submitting his application.

We determine, based on our review of the record, that the judge's findings are well-supported by competent evidence, with or without the buttressing hearsay evidence. Yannuzzi testified that his application-related investigation revealed Erickson was transported to BRMC for evaluation after police responded to his home on a report that "Erickson had threatened harm either to himself or [his] former brother-in-law by threatening to put a bullet in that person's head." Disregarding the reason why the police were called,[7] Erickson, during his testimony, confirmed he was brought to BRMC after the police response, and there underwent an evaluation. So too, Erickson admitted he had been treated for anxiety and depression since "around 2000, 2001" by Dr. Stamberg,[8] by Dr. Chiorazzi for five years prior to the 2014 incident, and by Dr. Wolpe prior to that "for a period of some years." He also testified he had been taking medications for anxiety and depression since 2000, and listed his then-current medications for anxiety and depression: Tofranil, Buspar and one other he could not recall.

---

[7] That multiple-hearsay evidence was never found to be a fact by the judge.

[8] Erickson referred to her as "Dr. Stamberg," but she identifies herself as an L.C.S.W. in her signature on the letter she sent to the police chief.

A-4775-16T1

Dr. Chiorazzi testified she diagnosed Erickson with "General Anxiety Disorder, panic attacks. He has a history of agoraphobia. He has a history of depression, but I don't call it major . . . I don't think that [is] his major diagnosis. I think his major diagnosis is the anxiety and some depression follows that." Dr. Chiorazzi opined that if Erickson discontinued his prescribed medication,

> he'd become paralyzed again, the way I saw him during the year following his wife's death. I mean, he had such anxiety that he was afraid to go to the mailbox to look at the mail to see if there were any bills that would come in that couldn't be paid. . . . I thought he was suffering tremendously.

The documentary evidence buttressed the testimonial evidence. In his letter to the Haworth Police Department, Erickson said he had anxiety and depression, and that he "was brought to [BRMC] for an evaluation." Dr. Chiorazzi and Stamberg sent letters to the then police chief in support of Erickson's attempt to gain the return of firearms seized from his home during the incident that resulted in his transport to BRMC. Chiorazzi confirmed she had been treating Erickson weekly for "severe Anxiety with Panic Attacks" since September 2011, and despite a recent exacerbation of his anxiety caused by family dysfunction, she opined "his firearms [could be] safely . . . returned to him" because his anxiety had "never resulted . . . [in threats] to harm himself or

another person."  Stamberg confirmed her treatment of Erickson since June 11, 2014 for "severe Panic Disorder and anxiety" and her conversation with the doctor at BRMC after the doctor "evaluated him the night of October 4[], 2014."  She said there was "no reason whatsoever" why Erickson's firearms should not be returned to him, claiming he had "no history of suicidal or homicidal [ideation] nor has he exhibited any inclination to harm any other person in the time I have seen him."

We defer to the judge's findings that Erickson's explanations for the answers he provided to questions 24 and 26 were incredible. The judge found evidence of Erickson's "lengthy history of mental health treatment" belied the proffered explanations, concluding he falsified information on his application.  Given our standard of review, we see no reason to disturb those findings and conclusion, proved by competent evidence and buttressing hearsay.

The same evidence supports the judge's conclusion that the issuance of the FPIC and HPP would not be in the interest of the public health, safety or welfare.  The judge made no finding as to the truth of the allegation that brought police to Erickson's home just prior to his transport to BRMC.  The judge stated only that he was unsatisfied Dr. Chiorazzi's explanations allayed concerns relating to the N.J.S.A. 2C:58-3(c)(5) disqualifier that arose from the evidence regarding Erickson's long history of mental

health afflictions. The judge, as fact-finder, was free to reject or accept that expert testimony. Brown v. Brown, 348 N.J. Super. 466, 478 (App. Div. 2002) (citing Carey v. Lovett, 132 N.J. 44, 64 (1993)).

We are unpersuaded by Erickson's argument that the judge misapprehended the law by expressing his concern about the prior return of Erickson's firearms. The judge clearly applied the correct statutes in making his final decision; he merely commented that the return of the firearms, "simply based" on Dr. Chiorazzi's letter, was disconcerting in light of the mental health evidence presented.

We decline to consider Erickson's constitutional arguments, not raised before the Law Division judge. State v. Robinson, 200 N.J. 1, 20 (2009). We also note our prior discussion in In re Winston, 438 N.J. Super. 1, 10 (App. Div. 2014), renders the argument meritless. See also In re Forfeiture of Pers. Weapons & Firearms Identification Card belonging to F.M., 225 N.J. 487, 506-08 (2016).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4775-16T1