**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2045-23

IN THE MATTER OF
SERGIO BIO.

_____

Submitted October 16, 2025 – Decided January 7, 2026

Before Judges Smith and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. GPA-008-23.

Evan F. Nappen Attorney at Law, PC, attorney for appellant Sergio Bio (Louis P. Nappen, on the brief).

Robert J. Carroll, Morris County Prosecutor, attorney for respondent State of New Jersey (Tiffany M. Russo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Petitioner Sergio Bio[1] appeals from the Law Division's order denying his application for a permit to carry a handgun (PTC) and for two permits to purchase handguns (PPH). We affirm.

I.

Petitioner, a licensed insurance professional with no criminal convictions, previously completed a State-approved concealed carry training course and an NRA-certified basic pistol safety training. Petitioner possessed a valid Firearms Purchaser Identification Card (FPIC) and had previously been issued permits to purchase handguns.

On April 26, 2023, petitioner applied to the East Hanover Township Police for a PTC and two PPHs. As part of the required investigation, Lt. Andrew Underwood conducted a full review of petitioner's background that included queries of the National Crime Information Center (NCIC), the state's firearms registry, driver abstract records, and domestic violence and court database systems. The results revealed petitioner had no adverse criminal history, no active restraining orders, and no disqualifying driver records. The East Hanover

---

[1] Although petitioner requested we use initials in lieu of his full name, we decline to do so since the factual circumstances presented in this appeal do not fall into the enumerated proceedings under Rule 1:38 to require confidentiality with the use of initials or pseudonyms.

Township Chief of Police denied petitioner's applications finding that issuance "would not be in the interest of the public health, safety [n]or welfare," and cited petitioner's negative history with law enforcement and, specifically, a 2017 incident in which a handgun registered to petitioner was subsequently used in a third-party's suicide.

Petitioner appealed to the Law Division. At the hearing, the State called Lt. Underwood who supported his testimony with police records from other municipalities. Lt. Underwood testified about his personal knowledge of the petitioner stemming from his involvement with the return of a previously confiscated firearm to petitioner after the Morris County Prosecutor's Office cleared the weapon for return.

Without objection, the trial judge admitted police reports generated from defendant's prior law enforcement contacts into evidence. The reports detailed petitioner's history of police contacts in various municipalities spanning roughly three decades. They included a motor vehicle stop where a night stick was found in a car petitioner was driving with no resulting charge; and dismissed charges for domestic violence-related offenses, theft of services, disorderly conduct, harassment, and a DUI/refusal, all of which were ultimately not prosecuted. There were also two administrative municipal ordinance violations referenced

which were also dismissed. Significant focus was placed on a 2006 Morristown altercation, in which several witnesses reported petitioner brandished a knife and directed a threatening remark to other witnesses. These charges were disposed of in municipal court and dismissed after the complaining witnesses failed to appear at trial. Additional references were made to two 2011 mutual temporary restraining orders with a former girlfriend (with both parties as applicants and both orders dismissed without findings of abuse); and a 2018 domestic dispute in which a third-party "insinuated" petitioner "pointed a handgun" at him.

Most significantly, the State heavily relied on the events of September 2017, when an acquaintance of petitioner, who had a well-documented history of mental illness and self-harm attempts, died by suicide using petitioner's handgun that she retrieved from petitioner's bedside table. Reports established that when the pair failed to meet as planned, petitioner called police to perform a wellness check. Petitioner arrived at the acquaintance's home and was informed his acquaintance killed herself with his weapon. Police described him as being agitated, loud, uncooperative, and belligerent. Petitioner was also described by police as being contentious and refusing to participate in further interviews at police headquarters.

A-2045-23

Petitioner testified at the hearing. He denied any criminal misconduct or possession of a weapon during any of the noted altercations. He provided context for each contact with law enforcement, explaining, for example, that the knife allegation in 2006 resulted from his attempt to assist a relative during a sudden disturbance outside a bar, rather than from any belligerent action on his part or weapons' possession. With respect to the dismissed domestic violence allegations, he clarified those arose in the context of deteriorating domestic relationships, were reciprocated by the complainant, and were voluntarily dropped by both parties who ultimately maintained amicable relations. Finally, petitioner stated unequivocally that he had not knowingly provided the suicide victim with access to his home nor to his firearm and testified the decedent entered his home surreptitiously using his car's door code and garage opener while he was not present.

Under cross-examination, Lt. Underwood acknowledged the law enforcement contacts all pre-dated 2020 and petitioner had neither adverse encounters involving firearms nor any other negative law enforcement incidents documented after being granted handgun permits in 2020. He conceded New Jersey law does not impose a categorical requirement that firearms be locked or secured in one's own home, although he opined that firearm owners are obligated

A-2045-23

to prevent access by those known to be prohibited persons including individuals with mental health concerns.

At the conclusion of the State's case, petitioner's counsel argued the State's proofs were evidentially insufficient because they were premised on uncorroborated hearsay. The court rejected this argument finding the hearsay contained in the police reports substantiated by the number and type of incidents was sufficiently reliable for consideration, particularly in the quasi-administrative firearm permit context.

After reviewing written summations, the trial judge rendered a comprehensive oral opinion denying the application. While acknowledging the absence of formal criminal convictions or other statutory "disqualifiers," the trial court ultimately concluded the permitting statutes invest law enforcement and the courts with authority to deny applications to those lacking the essential character of temperament to possess or to carry a firearm, emphasizing that the carry-permit standard required heightened scrutiny.

The court found the numerous police contacts collectively evidenced a pattern of agitation, poor judgment, and a lack of self-control by petitioner when interacting with law enforcement. The judge highlighted the credibility concerns created by conflicts in petitioner's statements regarding his last contact

6

with the suicide victim and discovery of his missing handgun, his repeated aggravation in police encounters, and the circumstances by which his firearm became accessible to an individual with a known history of self-harm. The court also found petitioner's testimony to be periodically evasive and, consequently, placed greater weight on the contemporaneous statements of officers and civilian witness accounts contained in the police records. The trial court entered an order affirming the municipality's denial of petitioner's applications concluding it was in the public interest to do so.

Petitioner appealed.

## II.

Because of the fact-sensitive nature of the statutory inquiry governing gun permit applications, we defer to the trial court's fact finding and credibility assessments. In re M.U.'s application for a Handgun Purchase Permit, 475 N.J. Super. 148, 199 (App. Div. 2023); In re Forfeiture of Pers. Weapons and Firearms Identification Card Belonging to F.M., 225 N.J. 487, 505-06 (2016). "Heightened deference should be given to the trial court's assessment of witness credibility because the court [is] able to observe the witnesses as they testified." M.U., 475 N.J. Super. at 171 (citing Balducci v. Cige, 240 N.J. 574, 594-95 (2020)). We do not disturb a trial court's factual findings and legal conclusions

"unless [we are] convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015)); see also In re Return of Weapons to J.W.D., 149 N.J. 108, 116 (1997) ("Ordinarily, an appellate court should accept a trial court's findings of fact that are supported by substantial credible evidence" (citing Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607 (1989))). We review questions of law de novo. Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (citing Manalapan Realty, L.P. v. Twp Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

N.J.S.A. 2C:58-3(c)(5) permits denial of a firearms permit where issuance of it would not serve public health, safety or welfare due to a lack of the "essential character of temperament necessary to be entrusted with a firearm."

In considering the State's proofs, the trial court must engage in a fact-sensitive analysis in evaluating a petitioner's appeal. M.U., 475 N.J. Super. at 173. As it did here, the trial court should "accept the relevant testimonial and documentary evidence, including from the appellant and the police." Ibid. (quoting Weston v. State, 60 N.J. 36, 46 (1972)). A trial court may also consider hearsay contained in the State's proofs, but it may not base its decision upon

hearsay alone. Ibid. (citing Weston, 60 N.J. at 50-52; In Re Dubov, 410 N.J. Super. 190, 202 (App. Div. 2009)). "Hearsay may be admissible in a gun permit hearing if it is 'of a credible character — of the type which responsible persons are accustomed to rely upon in the conduct of their serious affairs.'" Ibid. (citing Weston, 60 N.J. at 51). The court also "may consider the underlying facts relating to any criminal charges brought against the applicant, regardless of whether the charges were dismissed, In re Return of Weapons to J.W.D., 149 N.J. 108, 110 (1997), and even if the dismissal followed successful participation in a pretrial intervention program. [In re] Osworth, 365 N.J. Super. [72], 78 [(App. Div. 2003)]." M.U., 475 N.J. Super. at 173.

Here, the trial court considered the entirety of the record that included evidential police reports and the testimony of Lt. Underwood in its denial of petitioner's application. The judge assessed the credibility of petitioner in light of his own explanatory testimony against the circumstances detailed in those reports. The trial judge made adverse findings relating to petitioner's alleged temperament and cited numerous past police interactions. The judge appropriately gave substantial weight to the allegations and premised his credibility determinations on them. To that end, therefore, those observations were supported by evidence or by corroborated testimony.

9

The trial judge also properly determined, when considering all the evidence as a whole and applying the preponderance standard, petitioner possessed a history of engaging in conflict with others, poor judgment in handling sensitive situations, and a pattern of negative contacts with law enforcement. This demonstrates petitioner lacked the character of temperament to possess a firearm.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2045-23