**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3192-24

IN THE MATTER OF THE GUN
PERMIT APPEAL OF A.A.R.[1]
FROM THE DENIAL OF A
FIREARMS PURCHASER ID
CARD BY LAW ENFORCEMENT.

_____

Argued May 20, 2026 – Decided June 18, 2026

Before Judges Gummer, Paganelli and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Docket No. GPA-0006-24.

A.A.R., self-represented appellant.

Carolynn C. O'Dell, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Jessica L. Cardone, Warren County Prosecutor, attorney; Carolynn C. O'Dell, of counsel and on the brief).

Amanda McElfresh, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Jennifer Davenport, Attorney General, attorney; Stephen Ehrlich, Deputy Solicitor General, on the brief; David E. Leit and Sookie Bae-Park, Assistant

---

[1] We refer to petitioner by initials because medical records are referenced in the trial court's decision. R. 1:38-3(a)(2).

Attorneys General, of counsel; Andrew H. Yang, Amanda McElfresh and Giancarlo G. Piccinini, Deputy Attorneys General, on the brief).

PER CURIAM

Petitioner A.A.R. appeals from a May 22, 2025 order upholding the denial of his application for a New Jersey Firearms Purchaser Identification Card (FPIC). We affirm, substantially for the reasons set forth in the judge's well-reasoned decision.

I.

On February 29, 2024, petitioner filed an application for an FPIC with the New Jersey State Police (NJSP). In addition to submitting a completed FPIC application, petitioner emailed the NJSP a copy of nine gun permits he had obtained from other states and the District of Columbia.

On April 11, 2024, the NJSP Superintendent denied petitioner's application after an investigation, concluding he "lack[ed] the essential character and temperament necessary to be entrusted with a firearm, pursuant to N.J.S.A. 2C:53-3C(5)." The Superintendent's decision was predicated "on the totality of the circumstances" after reviewing records demonstrating: Freehold Township (Freehold) had denied petitioner's two previous FPIC applications—one of which was affirmed on appeal to the Law Division; and petitioner's

2

medical history, including a mental health evaluation; involvement in a domestic dispute; and "violent tendencies."

After petitioner filed a Law Division action appealing the denial, the judge conducted a plenary hearing. Freehold Chief of Police George Baumann and Freehold Lieutenant Joseph Winwoski testified regarding their investigations related to Freehold's denial of petitioner's prior FPIC application. NJSP Firearms Investigation Bureau Trooper Richard Somers testified about the NJSP's denial of petitioner's most recent application. Petitioner testified on his own behalf.

The hearing testimony established that petitioner's FPIC application had referenced his history of mental-health issues and he had been denied two FPIC applications by Freehold, one in 2021 and the other in 2022. Chief Baumann explained he had denied petitioner's first application in 2021 primarily because of petitioner's prior mental-health evaluation and his failure to submit a clinical psychologist's opinion stipulating to his ability to handle firearms. Chief Baumann testified he had also been concerned with "a situation in [petitioner's] home where [his] father . . . or parents had taken away [his] privileges to some kind of computer use." They had "turned the electricity off and then [petitioner] had rewired it within the home, or something, potentially almost causing a fire."

3

Trooper Somers testified that during his investigation of petitioner's FPIC application filed with the NJSP, he had reviewed medical records that demonstrated in 2017 petitioner was psychiatrically evaluated in a hospital on the advice of his therapist and because his parents believed he was "becoming a threat to himself and others." Trooper Somers was concerned by two specific notes in the medical records—one of which stated petitioner had a history of treatment for depression along "'with a past history of vague suicidal gesture by cutting himself.'" The second note of concern stated petitioner's mother had told hospital staff she believed petitioner had "no moral compass," and she feared petitioner would become a "'psychopath.'"

The medical records reviewed by Trooper Somers also demonstrated petitioner had "been posting racially biased videos on YouTube, which" continued even after petitioner's parents and school had asked him to remove the videos and to refrain from further posts. The records also referenced physical altercations between petitioner and his father when petitioner's father cut electricity to stop petitioner's online computer activities and when petitioner had tried to restore electrical access to his bedroom. According to the records, petitioner had been diagnosed with oppositional defiant disorder requiring mental health treatment.

A-3192-24

Trooper Somers also searched the internet as part of his investigation and discovered online activity that "concern[ed]" him. One of the online postings he saw was a 2022 petition that sought signatures to support petitioner's expulsion from Penn State University based on assertions petitioner was a "violent misogynist, homophobic, [and a] white supremacist" who had violated the school's student conduct policies and had created a dangerous environment on the school's campus. The petition stated petitioner had publicly announced he wanted to "shoot up a school," used racial slurs, hurt students and staff, sent pornographic images to minors, and promoted gun violence, rape, and white supremacy—with reference to specific examples of the petitioner's actions, both online and at the university. The petition contained 1458 out of the required 1600 signatures. Petitioner submitted a document stating Penn State University did not take any disciplinary action against him as a result of the petition.

Trooper Somers also reviewed petitioner's social-media posts in which he responded to a hypothetical, fictional scenario posed by an anonymous Reddit user who asked: "You are unable to be killed or injured for [twenty-four] hours and any crimes you commit during this time, you can't be charged for, no matter how extreme. What do you do with this power?" Petitioner responded in part:

> Oh man, I'd do a bunch of f[***]ed up shit. To start,
> I'd rape a bunch of really hot girls. I'd then probably

start driving around and shoot at random cars & pedestrians GTA style. I'd definitely shoot up a school and make sure "Pumped Up Kicks" is blasting on the loud speaker, I'd then impersonate a cop and commit police brutality. I'd then take over the White House and become dictator of the U.S. Oh, and I'd rob banks so I have enough money for life. Ok I'm done.

Trooper Somers testified that after he concluded his investigation, he denied petitioner's FPIC application because he lacked the essential character and temperament necessary to be entrusted with a firearm pursuant to N.J.S.A. 2C:53-3(c)(5). Freehold Lieutenant Winowski also testified he would be uncomfortable with petitioner having a firearm.

Petitioner's testimony confirmed his 2017 confrontation with his parents, he had authored the Reddit posts, and he had publicly uttered racial slurs and had made statements about raping women. Petitioner submitted a letter from Jordan Faiman, an outpatient counseling services provider he had visited in 2017 and once in March 2021. Faiman asserted petitioner "had made significant progress through outpatient on-site counseling treatment over the course of more than three years" particularly "in the areas of anger management and impulsivity control." Based on his session with petitioner in March 2021, Faiman concluded petitioner was "not currently a danger to himself and/or others."

After the hearing, the judge denied petitioner's FPIC application in an

order accompanied by a written decision. The judge found Chief Baumann and Trooper Somers had testified "truthfully and forthrightly" and that Lieutenant "Winowski testified credibly." The judge also found petitioner's online activity "troubling" and his posts "advocate[d] violent crimes against women and stated that [petitioner] would engage in this type of conduct if there were no consequences." The judge determined these posts, when "coupled with the mental health records from 2017[,] caution[ed] th[e] court as to whether [petitioner] possesse[d] the sufficient character required to be issued an FPIC."

Because the medical evidence conflicted, the judge stated she did not "rely solely on the medical records for [her] decision." The judge concluded that "when looking at the totality of the circumstances including the social-media posts, medical documentation, the previous denials by Freehold . . . and the admissions by [petitioner], the [c]ourt [wa]s extremely concerned about [petitioner]'s character or temperament."

Petitioner argues on appeal the judge erred in upholding the denial of his FPIC application by relying on medical evidence he asserts was "neither admissible nor supported by the testimony regarding the [medical record release] form" and impermissibly considered First Amendment-protected conduct and speech in violation of his Second Amendment rights. Petitioner

7

also asserts the judge erred by refusing to consider his constitutional challenges to the governing statute, N.J.S.A. 2C:58-3.

The State argues that because N.J.S.A. 2C:58-3(c)(5) contemplates a character analysis, the judge properly considered the totality of the evidence as to petitioner's actions and statements to deny his FPIC application. Both the State and amicus curiae the Attorney General of New Jersey submit petitioner waived his constitutional arguments by failing to properly brief them and, further, the FPIC statute is constitutional based on prior decisional law.

II.

We "review a trial court's legal conclusions regarding firearms licenses de novo." In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015). Appellate review of a trial judge's factual findings in firearm licensure matters, however, is "limited." In re Z.L., 440 N.J. Super. 351, 355 (App. Div. 2015). As such, an appellate court should ordinarily "accept a trial court's findings of fact that are supported by substantial credible evidence." In re Return of Weapons to J.W.D., 149 N.J. 108, 116 (1997).

III.

We are satisfied the judge applied the appropriate legal standard and predicated the FPIC denial on substantial, credible evidence in the record.

A-3192-24

A.

To purchase a firearm in New Jersey, a person must first obtain an FPIC.

The governing statute, N.J.S.A. 2C:58-3, states in pertinent part as follows:

> Except as hereinafter provided, a person shall not be denied . . . a [FPIC], unless the person is known in the community in which the person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-defense, that would pose a danger to self or others, or is subject to any of the disabilities set forth in this section or other sections of this chapter. A . . . [FPIC] shall not be issued:
>
> . . . .
>
> (5) To any person where the issuance would not be in the interest of the public health, safety[,] or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm.
>
> [N.J.S.A. 2C:58-3(c).]

Under the statutory scheme governing FPIC applications, "the chief police officer or the superintendent of the [NJSP must] . . . 'investigate the application to determine whether or not the applicant has become subject to any of the disabilities set forth in this chapter.'" In re Appeal of the Denial of R.W.T., 477 N.J. Super. 443, 461 (App. Div. 2023) (quoting N.J.S.A. 2C:58-3(e)). Under subsection (e), the FPIC application form used must set forth:

> [W]hether the applicant has been attended, treated or observed by any doctor or psychiatrist or at any hospital or mental institution on an inpatient or outpatient basis for any mental or psychiatric condition, giving the name and location of the doctor, psychiatrist, hospital or institution and the dates of the occurrence.
>
> [N.J.S.A. 2C:58-3(e).]

In R.W.T., we elaborated on this requirement, holding subsection (e)

> shows a legislative determination that this information is relevant and material for the background investigation into an applicant's fitness to purchase a firearm. The undeniable relationship between mental illness and the numerous mass-shootings around the Nation plainly shows why the Legislature deemed it necessary to require gun permit applicants not only to disclose whether they have ever been treated by a doctor or psychiatrist for a mental or psychiatric condition, but also to disclose when and where the treatment occurred so that a police chief can conduct an appropriate follow-up inquiry.
>
> [477 N.J. Super. at 471.]

"[A] judicial declaration that a defendant poses a threat to the public health, safety[,] or welfare involves, by necessity, a fact-sensitive analysis." State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004). Because of the importance of developing an appropriate record of factual findings, the statutory scheme has been interpreted to require Law Division evidentiary hearings to develop the critical facts bearing on a contested permit application. See In re

10

Dubov, 410 N.J. Super. 190, 200 (App. Div. 2009) (noting "the informality of a chief of police's initial consideration of an application for a gun permit requires an evidentiary hearing when an applicant appeals a denial to the [Superior] Court"). "The court may consider hearsay but may not base its decision upon hearsay alone." Matter of M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 173 (App. Div. 2023) (citing Weston v. State, 60 N.J. 36, 50-52 (1972)).

The judge's decision—predicated on sworn testimony and admitted records—is entitled to deference. We are unconvinced the judge impermissibly relied on petitioner's medical records to support the denial. Petitioner's mental-health records, obtained with his authorization, were considered along with other evidence to deny petitioner's FPIC application. The judge did not solely rely on petitioner's mental-health records but also considered his social-media posts, testimony as to Freehold's previous FPIC denials, and Trooper Somers's testimony and petitioner's testimony regarding his concerning behavior, all of which validated the NJSP's investigation results. Even without petitioner's mental-health records, the judge had a sufficient factual basis to deny petitioner's appeal as not being in the interest of "public health, safety[,] or welfare." N.J.S.A. 2C:58-3(c)(5).

11

We reject petitioner's suggestion that his application for a New Jersey FPIC should be granted because other states have issued gun permits to him under similar statutes. The record does not contain the information before the other jurisdictions at the time petitioner applied for those permits, nor an analysis of their statutory schemes. The judge was statutorily bound to make an independent determination of the record before her under N.J.S.A. 2C:58-3 rather than rely on the conclusions of other jurisdictions.

B.

We next turn to petitioner's contention that the judge erred in relying on his statements and conduct for the denial because they are protected by the First Amendment. We are unconvinced by that argument.

As a threshold issue, the NJSP and the OAG posit petitioner waived his constitutional arguments by making only limited references to "constitutional claims" in his merits brief. We agree petitioner only minimally references his constitutional arguments and does not provide a fulsome substantive analysis for our consideration. See N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div. 2015) (noting "[a]n issue that is not briefed is deemed waived upon appeal"); see also State v. D.F.W., 468 N.J. Super. 422, 447 (App. Div. 2021) (disallowing consideration of issues not formally briefed

by defendant); R. 2:6-2(a)(6).

Because the NJSP and the OAG addressed petitioner's minimal submissions on the constitutional issues in his merits brief, we briefly note the objections raised have been previously rejected by our decisional law. Following the United States Supreme Court's decision in New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. 1 (2022), we upheld the constitutionality of N.J.S.A. 2C:58-3(c)(5) in M.U., 475 N.J. Super. at 197. See also R.W.T, 477 N.J. Super. at 454 (rejecting, after the United States Supreme Court's decision in United States v. Rahimi, 602 U.S. 680 (2023), a "facial challenge to the constitutionality of the 'public health, safety[,] or welfare' disqualification criterion").

In M.U., we found the historical record showed "legislatures traditionally imposed status-based restrictions" that were "not limited to individuals who demonstrated a propensity for violence" but "also applied to entire categories of people due to the perceived threat they posed to an orderly society." M.U., 475 N.J. Super. at 189. Thus, we concluded N.J.S.A. 2C:58-3(c)(5), which contemplates a holistic view of the individual applicant, was facially constitutional. Id. at 190-94.

We have also rejected as-applied challenges, reasoning the legislative intent contemplates inquiry into cases of "individual unfitness" where the applicant's background demonstrates a risk to the community.  In re Osworth, 365 N.J. Super. 72, 77 (App. Div. 2003) (quoting Burton, 53 N.J. at 91); see also Rahimi, 602 U.S. at 693  (rejecting the defendant's facial and as applied constitutional challenges to 18 U.S.C. § 922(g)(8), which, under subsection (C)(i), barred a person from possessing a firearm if a restraining order concluded the person posed "a credible threat to the physical safety" of another).

The right to possess firearms is not boundless.  Rahimi, 602 U.S. at 690-91; see also In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 506-08 (2016) (explaining the limitations on the right to bear arms and the reasonable limitations imposed under New Jersey law).  Petitioner's argument that the judge impermissibly relied on "protected speech" to determine his fitness to possess a firearm under New Jersey's statute is without merit.  By applying for an FPIC, petitioner subjected himself to investigation by the NJSP and the consequences of that investigation, consistent with our jurisprudence.

We decline to address the other constitutional claims raised in the submissions because "they are not 'imperative to the disposition' of this matter."

14

Matter of Polatov, ___ N.J. Super. ___, ___ (App. Div. 2026) (slip op. at 18) (quoting Randolph Town Ctr., L.P. v. County of Morris, 186 N.J. 78, 80 (2006)); see also R.W.T., 477 N.J. Super. at 476 (declining to address constitutional questions not necessary to our decision).

To the extent we have not otherwise addressed them, any remaining arguments raised by petitioner lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3192-24