828 A.2d 946 (2003)
362 N.J. Super. 463
In the matter of the APPLICATION OF Joseph K. BOYADJIAN.
Superior Court of New Jersey, Appellate Division.
Submitted December 11, 2002.
Decided August 5, 2003.
*947 John L. Molinelli, Bergen County Prosecutor, attorney for appellant State of New Jersey (Susan W. Sciacca, Deputy First Assistant Prosecutor, of counsel and on the brief).
Evan F. Nappen, attorney for respondent Boyadjian.
Before Judges KESTIN, FALL and WEISSBARD.
The opinion of the court was delivered by KESTIN, P.J.A.D.
The State of New Jersey appeals from an order entered in the Law Division on February 1, 2002, overruling the decision of North Arlington's Chief of Police which denied Joseph K. Boyadjian's application for a duplicate firearms purchaser identification card (FPIC). The trial court's order mandated issuance of the card "in accordance with the provisions of N.J.S.A. 2C:58-3."
*948 The order emanated from a two-day evidentiary hearing at which the proofs, for good and ample reason with the consent of the parties, were presented in a different order than recommended in Weston v. State, 60 N.J. 36, 46, 286 A.2d 43, 48 (1972). Three witnesses testified on behalf of the State; except for proffering his application and FPIC, the applicant presented no affirmative evidence. The court then heard argument on behalf of both the applicant and the State. The judge stated the reasons for his decision in a thorough oral opinion at the close of the proceedings.
There is no essential factual dispute. On December 17, 1996, the Kearny Chief of Police issued an FPIC to Boyadjian who, at that time, resided in Kearny, Hudson County. See N.J.S.A. 2C:58-3d. Thereafter, Boyadjian moved to North Arlington, Bergen County. In July, 2001, he applied to the North Arlington Chief of Police for a duplicate FPIC. See N.J.A.C. 13:54-1.11(a). The North Arlington Police Department conducted a full compliance review investigation, including a criminal history check, as required by statute and regulation. N.J.S.A. 2C:58-3e; N.J.A.C. 13:54-1.11(c). On the basis of his department's investigation, the North Arlington Chief of Police denied Boyadjian's application. See N.J.S.A. 2C:58-3c(5). Pursuant to N.J.S.A. 2C:58-3d, Boyadjian sought review in the Law Division.
The first witness at the hearing was Captain Louis M. Ghione of the North Arlington Police Department. His evidence established that the department had received an application for a duplicate FPIC from Boyadjian on the basis of "change of address[.]" It showed a birth date of January 25, 1966, and a current address in North Arlington. The applicant had circled the "yes" answers on the application in response to two questions:
(1) Have you ever been convicted of a disorderly persons offense or adjudged a juvenile delinquent?
and
(2) Have you ever been convicted of a crime that has not been expunged or sealed?
The space for details following the first question contained the following specifics:
1988 Kearny Rec. Stolen Prop.
1992 Lyndhurst Theft of Parts
1997 Bellville [sic] Lewdness
The space for details following the second question contained the notation "See Above." The circled responses provided to all other questions on the form were in the "No" column.
The application was referred to Captain Ghione as the North Arlington Police Department's officer in charge of processing all requests for FPICs and handgun permits. Ghione initiated a routine investigation. His inquiry to the New Jersey State Police regarding criminal history produced a response noting a "current address" in Kearny and a record of the following arrests and dispositions:
Arrest 001 04/23/1987 Unauth use of veh
 Making false report
Disposition: both charges dismissed
(Municipal Court
*949 After receiving this information, Ghione communicated with each police department named to verify the arrests and dispositions indicated, and to obtain details. At trial, he presented the documents he had received in response to his inquiries, and he testified as to each. Ghione also testified concerning a certified driving record abstract he had acquired. According to Ghione, the abstract, dated July 14, 2001, showed no history of "a propensity for alcoholism" as would be indicated by "DWI arrests[.]" However, it showed nineteen suspensions of driving privileges, although Ghione could not determine from the abstract whether Boyadjian's driving privileges were "in effect" at the time of trial.
While conducting his investigation, Ghione spoke with Boyadjian, especially concerning the 1993 Kearny arrest for aggravated assault with a deadly weapon which had resulted in charges that were dismissed. Boyadjian acknowledged firing an arrow from a crossbow at an individual who was dating his sister at the time.

Secaucus)
Arrest 002 07/25/1988 Possess stolen prop
Disposition: Guiltyreceiving stolen veh
(Municipal Court Dismissedunauth use of veh
Kearny)
Susp confinement 10D Amount assessed $150
Arrest 003 09/02/1992 Damage property
 Attempt to commit larc
Disposition: Dismisseddamage
(Municipal Court prop-private
Lyndhurst) Guiltyattempt to commit larc-
 parts from veh
 Dismissedburgl tools poss
Amount assessed $575
Arrest 004 09/15/1993 Aggravated assault with weapon
Disposition: No billAggravated assault
(Municipal Court with weapon
Kearny) No billPoss weapon unlawful
 purpose
Arrest 005 05/26/1997 Terroristic threats
Disposition: Dismissed
(Municipal Court
Kearny)
Arrest 006 06/07/1997 Lewdness
Disposition: Guilty
(Municipal Court
Belleville)
Probation 1Y Amount assessed $507
Criminal History Diversion Program and Felony Conviction Summary
Pre-trial intervention: 000
Conditional discharge: 000
Felony convictions: 000
Violation of probation: 000

*950 Ghione told Boyadjian that he was continuing the investigation but, based on the information compiled to date, he was "leaning" to recommending to the Chief of Police "against [Boyadjian] ... receiving the transfer." Ghione testified that Boyadjian, in response, "expressed that it was very important to him to have his firearms and if we could see through some of the incidents and if I could ... look them over closely so that I'd be able to make a fair evaluation, and I agreed to that, absolutely."
After Ghione concluded his investigation he recommended a denial to the Chief of Police, who concurred. Ghione spoke by telephone with an assistant Bergen County prosecutor and received approval of that decision. He then sent a letter to Boyadjian, dated November 6, 2001, advising of the denial without specifying reasons therefor in the letter, and stating that Boyadjian had the right to seek review of the decision in the Superior Court. Thereafter, Ghione testified, he had at least two discussions with Boyadjian by telephone and in person during which
Mr. Boyadjian explained to me once again that ... he had some firearms that were important to him. I explained to him that he could appeal ... and ... he also indicated he wanted to know what I had against him. I explained to him that this was not an issue of a personal nature, this was an issue of me doing my job in regard to public safety. And we ended the conversation I think very pleasurable with one another, he understood my position.
When asked at the hearing to explain his reasons for recommending denial, Ghione replied:
I am concerned for public safety. There [was] that ... Kearny incident which showed a propensity towards violence in the use of a weapon ... in a street setting which concerned me even more. Although there was a finding of no bill on this particular incident, I was concerned that the conversation that I had with him indicative that the event took place showed thatonce again that God forbid if the firearm was in his hand and he became angry enough that there would be a propensity for ... public harm.
On cross-examination, Ghione clarified that an FPIC authorizes the purchase of rifles and shotguns and has nothing to do with handguns. Ghione acknowledged that Boyadjian had been truthful and straightforward throughout the process and that he had no felony convictions or conditional discharges. A point was made by Boyadjian's counsel in questioning Ghione that three of the six arrests noted in the arrest record had occurred in Kearny, where the initial FPIC had been issued. Cross-examination also clarified that, with the exception of a single motor vehicle violation in early 1999, all of the offenses on Boyadjian's driver's abstract occurred before 1995. Counsel emphasized in his questioning that the abstract reflected no violations involving alcohol, to which Ghione readily acceded.
Boyadjian's attorney also emphasized that Ghione had conducted the investigation, and had sent the letter of denial stating no reason for the negative action. Counsel suggested that the Chief of Police had delegated the decision-making function as well as the connected administrative tasks. Ghione denied that was so. The colloquy in this connection was:
Q. Is it fair to say that this is where you focus on this task, that you actually make the decision regarding the denial?
A. No, I don't think that that's fair at all. There have been incidents where I made suggestions to the chief of police and ... he has differences of opinion. I *951 bring to him the facts that are presented to me as well as the case and he takes the opportunity to review them. As a matter of fact, there are also additional times where he wants additional facts gathered, so that's not a fair statement.
Q. Well do you know why as the issuing authority he doesn't send a letter of denial or approval in your department? Do you know why that is?
A. The reason thathe just delegates it to me. Why specifically? Because I've done the investigation, I think that it's in fairness to the people that are being notified so that they're able to contact me.... I was the contact point... from the beginning to the end, so I think it's just fairness to the residents of the borough.
The next witness was the victim in the September 15, 1993 Kearny incident which resulted in Boyadjian's arrest for aggravated assault with a weapon (crossbow). That witness provided factual detail regarding the incident and related events. He testified that the charges were dismissed because he chose not to pursue the matter.
The third and final witness at the hearing was the North Arlington Chief of Police, Frank Italiano, Jr. He testified briefly that, based on Captain Ghione's investigation and recommendation and Italiano's own review of the entire file, he had "disapproved the application for the interest of public safety," and had directed Ghione to send a letter to Boyadjian advising him of the denial.
On cross-examination, Italiano acknowledged having made that decision without conferring with the Chief of Police in Kearny, who had issued an FPIC to Boyadjian less than five years earlier, three years following the crossbow-firing incident in Kearny. Italiano testified that a conversation with the Kearny Chief of Police "wouldn't [have] affect[ed his] decision."
The State rested. Boyadjian, having elected to present no testimony, objected to the receipt in evidence of the various police reports that had been offered through Ghione's testimony. The objection was overruled, with the judge indicating: "[t]o the extent ... they contain impermissible hearsay, that will be redacted and will not be considered[.]" After hearing the closing arguments of counsel, the judge rendered his decision.
The trial judge "reverse[d] the decision of the Chief of Police of the Borough of North Arlington" on the ground that the initial grant by the Kearny Chief of Police was binding in the absence of demonstrably changed circumstances since the initial grant. The judge opined that "it is important that there be some finality to these decisions by chiefs no matter who they are" or in which community they hold office. He held:
. . . [G]iven the strong legislative endorsement of firearms purchaser identification cards and myself having had the opportunity to review all these data, looking at whose opinion was given in what timeframe and for what reason, I cannot come to the firm conviction that in January 2002 . . . the grant of the duplicate firearms purchaser identification card would be a detriment to, a hinderance to or in any way significantly or substantially compromise the public health, safety or welfare. I do not find that the proofs demonstrate a disability. And I must say thisthat if procedurally this somehow was turned around where we were clearly treating this as a revocation application, I would be doing the same kind of analysis and I would be concluding that while a close call, that benefit of the doubtbecause the Legislature *952 says so, not because I say so falls to the applicant.
The kind of disability that the State was suggesting here is one of those kinds of disabilities that can change over time. In other words, ... it's not an absolute disability, say a conviction for a crime. It's also not a prohibition such as somebody being under the age of 18, but of course that also can dissipate over time, you just wait a couple of months or years and ... you become qualified. I'm mentioning that because the vagaries of Mr. Boyadjian's situation may still remain subject to change.
In coming to this conclusion, the judge had referred to the regulations pertaining to FPICs, N.J.A.C. 13:54-1.1 to -1.15, which, in addition to specific statutory terms, govern a chief of police in determining whether to issue a duplicate FPIC to an applicant new to the municipality who possesses an FPIC issued elsewhere. Specifically, the judge cited N.J.A.C. 13:54-1.11(c):
It shall be the responsibility of the chief of police of the municipality wherein the applicant currently resides ... to conduct a criminal history records check and to determine if the applicant is subject to any of the disabilities as provided by law and to issue the duplicate card should the applicant qualify.
He also cited N.J.A.C. 13:54-1.12(b):
Any person denied a firearm purchaser identification card or a permit to purchase a handgun shall be notified in writing by the issuing authority of the reasons for the denial.
Relying on Weston, supra, 60 N.J. at 45, 286 A.2d at 47, the judge then posited the trial court's responsibility, on review at the behest of an aggrieved applicant, to engage in a "review de novo" of a police chief's decision. He noted that, notwithstanding the absence of a reason for the denial in the letter-notification to Boyadjian, the basis for the chief's action had been conveyed verbally to Boyadjian and had been fully developed at trial, thus satisfying the explanation requirement of N.J.A.C. 13:54-1.12(b). The judge found, based upon the evidence at trial, that Chief Italiano had, himself, denied the instant application, as contemplated by law; and the judge held that the chief's delegation of functions to Captain Ghione had not been improper. The judge found further that, based upon the full record developed in the investigation of Boyadjian's background, the Chief had denied the application not because of any specific disqualification but because he had determined that "to allow Mr. Boyadjian to continue with his firearms purchaser identification card would be contrary to the public health, safety and welfare." See N.J.S.A. 2C:58-3c(5); see also In re J.W.D., 149 N.J. 108, 116, 693 A.2d 92, 96 (1997); Adler v. Livak, 308 N.J.Super. 219, 224-25, 705 A.2d 1218, 1220-21 (App.Div.1998).
The judge went on to observe that there were similarities between the process of considering the issuance of a duplicate FPIC and the procedure for revoking an FPIC. He concluded, however, that "there are some differences between refusing a duplicate firearms purchaser identification card and an application to revoke one that's been issued." By way of factual analysis, the judge referred specifically to the chronology of Boyadjian's arrests and the communities in which they occurred in relation to the dates upon which the initial FPIC had been issued and the instant application denied.
In reviewing the legislative and regulatory scheme relating to permits for firearms, the judge noted that the authority for granting or denying FPICs was reposed in local chiefs of police *953 presumably because the chief of police of the municipality not only had the tools available to do an investigation, but also was right on the scene. And those tools include being able to do a criminal history check, perhaps a motor vehicle check, has the personnel to go out and talk to people in the neighborhood to review the references that are provided, to do the mental health check.
The judge then posited the presumption of validity that attends official action and stated that it applied to the action of the Kearny Chief of Police in granting the FPIC initially. He concluded:
I don't think that once a firearms purchaser identification card is issued that it can be questioned anywhere except in court, and it must be on a revocation or in the realm of some sort of changed circumstances when a duplicate card or a change of address card is requested. In other words, with all due respect to the exercise of discretion and decision making of the chief of North Arlington, he is bound to follow what the chief of Kearny did up to the point that he can demonstrate from changed circumstances that there's a reason for a disqualification. To do otherwise would invest and inject the potential for such mischief in the permitting process that anyone could just willy-nilly challenge decisions of the initial issuing agent. That's not what the gun control contemplates and that's not what the regulations of the state police contemplate where they do require, no doubt about it, a full review at the time a ... change of address card or a duplicate, is requested.
I am not suggesting that a chief of police is free to truncate his or her review just because the permit had been previously issued. But if the duplicate is not to be issued, the articulated reason has to be on the ground not that the [prior chief] erred, but why now, either on a changed circumstance analysis or in the aggregate the applicant for the change card, the duplicate card sports [sic] a disability. So I reject the one prong of the State's argument that I can go back or that the chief of North Arlington can go back and second guess what was done previously by the Kearny chief.
I have to analyze the second prong of the argument and that is in conjunction with everything that went before December 17th 1996, the two events of the arrest for a terroristic threat and the lewdness conviction demonstrate collectively that Mr. Boyadjian, if issued this duplicate card, thereby be permitted to continue to own his guns and continue to purchase guns, and I'm talking about long guns unless he gets a permit to buy a handgun, would be contrary to the public health, safety or welfare.
To analyze that I think I'm entitled, and I declare that I'm entitled, to look at two different issues, but they are related. One is what evidence is there of some mishandling or proper handling or the absence of any proof of Mr. Boyadjian vis-a-vis handguns and what is more globally Mr. Boyadjian, how does he present himself in terms of being a threat to the public health, safety and welfare.
In terms of gun specific, there's no evidence one way or the other. And since the permit had already issued it would be up to the State to demonstrate that there was some evidence of mishandling of guns. And the State asserts that there's evidence in this case that there's mishandling of weapons because the major concern of the state is the events in Kearny in 1993 with a crossbow, a crossbow that was allegedly *954 fired ... and which luckily or purposely missed. But in the specific realm of handguns, there's no evidence of mishandling.
More globally what we have here is a history of scraps with the law, it's not something that Mr. Boyadjian ought to be proud of, it's not something that I endorse or condone, it's certainly not something, and the State readily concedes this, is conclusively a disqualification because these are not convictions of crimes.
I have in the past in other cases determined that in the aggregate the conduct of a party over time can demonstrate a disability. It might be that a final arrest and conviction, if that's what it is, is the straw that breaks the camel's back, even if just looking at that final event by itself it might not be very meaningful. And that's one way I've looked at this, I've tried to analyze it.
Would the lewdness conviction by itself be enough to deprive Mr. Boyadjian under a public health, safety and welfare analysis of his legislative entitlement, unless there's a proven disability to an FPIC? I say that by itself would not be enough. I don't like the conviction, but I'm also aware that it's now not state [sic] but it's almost five years ago. It was June 7th 1997, so it's four and a half years ago. And so now I look in the aggregate, not to use this as a term of art, but to try to get a gestalt of what is going on in Mr. Boyadjian's life since 1987, and does this event, because it's the conviction more than this arrest the arrestthere's so much hearsay in that arrest that it's not very meaningful. I'm talking about the terroristic threat. But the conviction is a conviction, there's no dispute about that. But does that conviction add anything to everything that went before it? I think that it does, but I don't think that it amounts to a disability. And I'm making that ... under the rubric of the de novo review that I'm obligated to make under Weston [, supra, 60 N.J. 36, 286 A.2d 43].
I think it's a close case. Close cases in FPIC cases go to the applicant. And in this case it's tilted in the applicant [sic] for two reasons. The first reason is * * * there's a presumption in favor of granting this kind of a permit, unlike what I've held is a presumption against granting a permit to carry a handgun. So the Legislature has expressed an encouragement so to speak to this kind of a permit, subject to disabilities.
The second thing is I've got one chief of police who issued the permit and I've got one chief of police who wouldn't issue the permit. And I don't want to make it seem so simple that they nullify one another or they balance each other out, but I've heard the chief of police from North Arlington. He was here, he was a credible witness, he did not, for whatever reason, discuss his view with the Kearny chief. * * * And I don't know what the Kearny chief might have said, but the Kearny chief would have a much moreand I don't think I'm stretching for thisintimate knowledge and understanding of Mr. Boyadjian than Chief Italiano. That's not a knock on the North Arlington chief, but all of the events that North Arlington is relying upon happened in Kearny and that's where the permit was issued. And it's much closer in time, it's a compressed timeframe. And so I'm not saying that I am elevating the ... chief in Kearny's opinion over the chief in North Arlington, but that's an important facet that impels me to the conclusion that the State has not demonstrated this is a disability.
The man on the scene, the chief in Kearny, presumptively determined there *955 was good cause to issue this, or better said, there was no disability and therefore the permit should issue. North Arlington thought otherwise four years later.
All the findings made by the trial judge are well-supported by the record and are, therefore, binding on appeal. See Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495, 500 (1974). Moreover, we express no cavil, in general, with the judge's understanding of the statutory/regulatory scheme governing firearms permits or some of the public policies that inform them. We reverse, however, because of an error in the balancing process the trial judge employed in evaluating the local administrative determination under review, i.e., the denial of a duplicate FPIC. He gave insufficient weight to the interests of the community in which the applicant resided at the time he filed the instant application. See N.J.S.A. 2C:58-3c (establishing as the basic general criterion that the applicant be a "person of good character and good repute in the community in which he lives" and not subject to any specified disabilities, including where "(5) ... issuance would not be in the interest of the public health, safety or welfare"). Correlatively, the judge gave too much weight to a decision in the community from which the applicant had moved and in which the initial FPIC had been issued.
The substantive and procedural standards governing a trial court's review of a denial are generally elucidated in Weston, supra, 60 N.J. 36, 286 A.2d 43. "The Legislature [has] committed the original decision as to whether a firearms purchaser identification card should be granted to the discretion of the chief of police . . ., subject to standards which have been adjudged constitutionally adequate." Id. at 43, 286 A.2d at 46. "[T]he statute directs issuance of the [FPIC] unless good cause to the contrary appears[.]" Id. at 43-44, 286 A.2d at 47. "The function of the Police Chief as the local administrative official charged with responsibility for the original decision to grant or withhold the [FPIC] involves largely the exercise of an informal discretion[,]" id. at 45, 286 A.2d at 47, based upon the information disclosed by "a good faith investigation," id. at 43, 286 A.2d at 46. That decision is subject to de novo review by the Superior Court, designed to "compensate[ ] constitutionally for procedural deficiencies before the administrative official[,]" id. at 45, 286 A.2d at 48, and "contemplat[ing] introduction of relevant and material testimony and the application of an independent judgment to the testimony by the reviewing court." Ibid. "[I]n evaluating the facts ... and the reasons given for rejection of the application, the court should give appropriate consideration to the Chief's investigative experience and to any expertise he appears to have developed in administering the statute." Id. at 46, 286 A.2d at 48.
The reason for reposing authority over the grant of FPICs in local chiefs of police seems obvious. Given their responsibilities for public safety, they have compelling interests in firearm control in their communities; and their investigative experience and familiarity with investigative techniques, as well as their expertise in evaluating the data obtained through investigation, see ibid., furnish presumptively reliable bases for determining whether an individual's access to firearms is likely to compromise public safety in that community. Cf. Adler, supra, 308 N.J.Super. at 224-25, 705 A.2d at 1220-21. There are other significant policy bases for localizing the permitting authority. For example, the capacity for harm from access to firearms, even those designed for recreational use, may be very different in large cities, *956 in residential suburbs, and in rural areas. Accordingly, the Legislature has determined it best that the decision whether or not to issue a permit be made on the local level. Although, when a trial court judge conducts the de novo review called for by statute, he is not bound by any factual determinations that have been made, he must, nevertheless act with appropriate regard for the local interest factor to the extent legitimately reflected in the police chief's denial, as well as for the chief's "investigative experience and ... expertise[.]" See Weston, supra, 60 N.J. at 46, 286 A.2d at 48. See also In re Phillips, 117 N.J. 567, 578-80, 569 A.2d 807, 812-14 (1990).
Thus, this case presents more than just the relatively straightforward problem posited by the trial court of choosing between disparate views of two police chiefs. The question presented cannot be resolved by the simple expedient of applying the presumption of validity to one chief's action and not to the other's. In considering Boyadjian's 2001 application, the North Arlington chief was not reviewing the 1996 action of the Kearny chief in granting the initial application. Rather, the North Arlington chief was making an independent determination based on his own investigation and evaluation, as he was obliged to do by the clear requirements of N.J.A.C. 13:54-1.11(c) in respect of any application for a duplicate FPIC. Therefore, the presumption of validity, an appellate review standard, see, e.g., In re Petition of New Jersey American Water Co., 169 N.J. 181, 195-96, 777 A.2d 46, 54-55 (2001); City of Newark v. Natural Resource Council, 82 N.J. 530, 539-40, 414 A.2d 1304, 1308-09, cert. denied, 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980), not one to be applied between tribunals or decision-makers on the same level, did not come into play when the North Arlington chief was called upon to act. See Central Home Trust Co. v. Gough, 5 N.J.Super. 295, 301, 68 A.2d 848, 851 (App.Div.1949). To conclude that the presumption of validity applies to the Kearny chief's determination in a way that limits the discretion of the North Arlington chief would be to hold that the latter official's determination did not enjoy the presumption.
The trial judge's legitimate concern that one local official's decision should not be subject to "willy-nilly challenge" does not apply, as here, where a second official was performing a mandatory evaluation made necessary by an intervening event, i.e., Boyadjian's change of residence, and was applying the principled independent judgment called for by statute and regulation to a factual record that had changed, or one that could fairly be viewed as having different values in one community than it had had in the other. The Kearny police chief had once been "the man on the scene," as characterized by the trial court judge. That was no longer so. Given the statutory and regulatory scheme vesting first-instance regulation of firearm activity in the police chief of the applicant's community of residence, and the reasons for that assignment of responsibility, it is the North Arlington chief who is now "the man on the scene," i.e., the official whose judgment is entitled to the requisite respect.
While Boyadjian resided in Kearny, it was that community's chief of police whose judgment in granting the initial FPIC was entitled to the "appropriate consideration" referred to in Weston, supra, 60 N.J. at 46, 286 A.2d at 48. Once Boyadjian moved to North Arlington, he subjected himself to the standards applied by that community's chief of police. Of course, neither chief was permitted to dispose of Boyadjian's application on a basis that was arbitrary, capricious or unreasonable. See Ebler v. City of Newark, 54 N.J. 487, 491, 256 A.2d 44, 46 (1969). But, within the bounds of *957 that controlling standard, each chief was privileged to act as an independent agent, discharging in a principled way, his public safety responsibilities for the community in which he was employed, without being limited by the actions previously taken in another community. Surely, a resident whose application for an FPIC in one community is denied could reasonably expect that a future application in another community to which he moves would be considered on its merits by the fairly established and decently administered standards generally applied by the second municipality's chief of police, unfettered by the prior denial except as a matter of information.
There is no hint of arbitrariness, caprice or unreason in the record before us. When the North Arlington Chief of Police conducted his review, he considered Boyadjian's record by his own best lights. Moreover, that record was somewhat different from the record the Kearny chief had considered five years earlier in the sense of what it connoted about the applicant's regard for the law and his capacities for self-control. The record before the North Arlington chief showed additionally that, in the space of less than two weeks in 1997, the applicant had been convicted of yet another charge, lewdness, in Belleville Municipal Court; and had had yet another run-in with the police in Kearny, an arrest for terroristic threats resulting in a charge that was dismissed. Given these additional factors, and applying his own fairlydrawn standards for determining the gravity of the earlier arrests as they bore upon an FPIC application from a resident of North Arlington, there is no basis for concluding that the denial at issue here was impermissible.
Reversed.