**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1583-18T4

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

v.

S.A.,

       Defendant-Appellant.

_____

       Argued October 17, 2019 – Decided  October 23, 2019

       Before Judges Haas and Mayer.

       On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. 2018-014.

       Paul E. Zager argued the cause for appellant (Paul E. Zager, attorney; Paul E. Zager and  Jeff Edward Thakker, of counsel and on the briefs).

       Lisa Sarnoff Gochman argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Lisa Sarnoff Gochman, of counsel and on the brief).

PER CURIAM

Appellant S.A. appeals from a November 1, 2018 Law Division order upholding a municipal police department's denial of his application for a New Jersey Firearms Purchaser Identification Card (FPIC) and a handgun purchase permit. Because the trial judge based his decision solely upon hearsay presented by a detective and the chief of police at the evidentiary hearing, we are constrained to reverse the decision denying the application and remand for further proceedings.

The parties are fully familiar with the procedural history and facts of this case. After appellant submitted his application, a detective assigned to the township police department conducted an investigation, which included a routine records check. As a result of this investigation, the detective determined that appellant "ha[d] a criminal history as well as a history of domestic violence incidents." Specifically, the detective learned that appellant had been charged with simple assault in 2001 after he allegedly pushed his sister. This charge was later dismissed.

In 2002, appellant was charged with theft, which was also dismissed after appellant was accepted into the pre-trial intervention program. Ten years later, in 2012, appellant was charged with aggravated assault and criminal restraint after he allegedly choked his former spouse. These charges were subsequently

downgraded to a "local ordinance violation." That same year, while appellant and his former spouse were in the midst of divorce proceedings, appellant was arrested for defiant trespass after he allegedly entered his spouse's home without permission. This matter was also dismissed.

The detective also found four other matters during his investigation that did not result in appellant's arrest. In the first incident, appellant's former spouse filed a complaint against him for allegedly accessing her email account during their divorce proceedings. In 2004, he allegedly had a verbal dispute with his former spouse; in 2013, there was a custody dispute; and, in 2016, appellant was purportedly involved in a "road rage" incident.

In his application, appellant correctly answered that he had never been convicted of a crime, a disorderly persons offense, or a domestic violence offense. However, the detective asserted "that that was not the case[,]" and recommended that the chief deny the application because appellant "lied on the application." On March 12, 2018, the chief of police (chief) agreed with the detective's assessment and denied appellant's application.

Appellant's attorney contacted the detective to point out that appellant had accurately answered the pertinent questions on the application form. He also appealed the chief's determination to the Law Division.

In May 2018, the detective reopened his investigation as appellant requested. The detective also contacted appellant's former wife, his wife's father, and appellant's sister. The detective testified that appellant's ex-wife told him that she was "[o]ne hundred percent against" the idea of appellant obtaining a firearm because he "still has anger issues" and is a "loose cannon." The detective stated that appellant's sister generally supported his permit application, but understood the concerns the detective had about his prior arrests. Appellant's sister allegedly told the detective that appellant had pushed her, threw her to the ground, and punched her. Appellant's father-in-law advised the detective "that he did not want to participate in the interview because he did not want his answers to upset the current positive aspects of his relationship with" appellant.

Based on this information, the detective concluded that even though appellant had not falsified his application, the application should still be denied because issuing a FPIC and a purchase permit would not be in the interest of public health, safety, or welfare under N.J.S.A. 2C:58-3(c)(5). The chief concurred with the detective's recommendation. Before the evidentiary hearing, appellant successfully applied for an expungement of his arrest record.

At the hearing, appellant acknowledged that he previously had an arrest record prior to its expungement, reviewed each arrest and complaint during his testimony, and steadfastly denied that any of the incidents occurred in the manner described in the detective's investigation report. Significantly, the detective conceded during his testimony that appellant had never been convicted of a crime, and that all the detective had discovered were "unproven allegations[.]" In spite of this fact, the State did not call appellant's former spouse, his sister, or his father-in-law to testify about the details of any of the incidents discussed in the detective's report.

At the conclusion of the hearing, the judge rendered a written opinion denying appellant's application. The judge rejected appellant's contention that the chief should not have considered the facts underlying each of his arrests because his arrest record had been expunged.[1]

---

[1] We agree with the judge's ruling on this issue. It is well established that "[t]he dismissal of criminal charges does not prevent a court from considering the underlying facts in deciding whether a person is entitled to purchase a firearm or recover one previously taken by the police." In re Osworth, 365 N.J. Super. 72, 78 (App. Div. 2003) (citing In re Return of Weapons to J.W.D., 149 N.J. 108, 110 ((1997)); see also In re J.D., 407 N.J. Super. 317, 327-29 (Law Div. 2009) (holding that an applicant for a FPIC and handgun purchase permit is required to waive privilege of expungement "because government has a duty to determine whether the applicant qualifies lawfully to own a handgun").

In thereafter considering those facts, however, the judge relied solely upon the detective's testimony and investigative reports, which contained his hearsay accounts of what the arrest records alleged had occurred and what appellant's character references had told him. None of this hearsay was corroborated in any way at the hearing. Appellant denied committing any of the offenses. The judge did not refer to this testimony in his decision, and made no findings concerning appellant's credibility. Although appellant's former spouse and his sister were presumably available to testify, the State did not call them as witnesses[2] to provide competent evidence to support the admittedly "unproven allegations" contained in the detective's written reports and testimony.[3]

---

[2] At the hearing, the judge mistakenly asked appellant why his character references were not "coming here to testify today[.]" However, the State, rather than appellant, had the burden of producing competent evidence to support the chief's determination to deny appellant's application. Weston v. State, 60 N.J. 36, 46 (1972). Thus, we reject the State's assertion on appeal that it "had no obligation to present the in-court testimony [of these witnesses] in lieu of [the detective's] own testimony recounting his interview with each" of them.

[3] As for appellant's former father-in-law, who refused to provide a statement to the detective concerning appellant's application because he wanted to maintain a good relationship with appellant, the judge stated that he was drawing an inference that the father-in-law's testimony would have been adverse to appellant. However, there was no competent evidence in the record to corroborate the detective's hearsay statement concerning what this individual told him. Under those circumstances, the judge should not have drawn an adverse inference with regard to the father-in-law's alleged statement.

A-1583-18T4

Based solely on the hearsay evidence presented by the detective and the chief, the judge concluded that "the State had shown by a preponderance of the evidence that the issuance of [appellant's] gun permit would lead to concerns for the public health, safety, or welfare" under N.J.S.A. 2C:58-3(c)(5). Therefore, the judge denied the application. This appeal followed.

On appeal, appellant primarily argues that the judge based his decision to deny his application solely on the hearsay information contained in the detective's investigation reports concerning his review of defendant's arrest records and the complaints filed against him, even though defendant testified that none of these incidents occurred in the manner described in those records. We agree.

On appeal, we are bound to accept the judge's fact findings if they are supported by substantial credible evidence, J.W.D., 149 N.J. at 116-17, but we exercise de novo review over the judge's legal determinations. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The standards for reviewing an application for a FPIC and handgun purchase permit are well-settled. A municipal police chief has the discretion, "subject to standards which have been adjudged constitutionally adequate," to grant or deny an individual's application for a handgun permit or identification

7

card.  State v. Weston, 60 N.J. 36, 43 (1972); see also N.J.S.A. 2C:58-3(d).

"'The function of the Police Chief as the local administrative official charged with responsibility for the original decision to grant or withhold . . . involves largely the exercise of an informal discretion,' based upon the information disclosed by a 'good faith investigation.'"  In re Application of Boyadjian, 362 N.J. Super. 463, 475 (App. Div. 2003) (citations and internal quotation marks omitted).

When reviewing an application, a police chief must consider the interests of the community and must not make a decision that is "arbitrary, capricious or unreasonable."  Boyadjian, 362 N.J. Super. at 478.  After completing the investigation, if the police chief decides to deny the application, there is "no obligation to hold a trial-type hearing before doing so."  Weston, 60 N.J. at 43.  If the chief decides, however, to deny the application, the applicant should be given "an opportunity . . . to discuss the matter . . . to be informed of the reasons for the denial and to offer any pertinent explanation or information for the purpose of meeting the objections being raised."  Id. at 44.

A-1583-18T4

The chief's decision to deny an application is subject to de novo review[4] by the Law Division, which "in this context contemplates introduction of relevant and material testimony and the application of an independent judgment to the testimony by the reviewing court." Id. at 45. The police chief bears the burden of establishing the existence of good cause for the denial by a fair preponderance of the evidence. Id. at 46. In evaluating the facts and the reasons given for rejection, "the court should give appropriate consideration to the Chief's investigative experience and to any expertise he appears to have developed in administering the statute." Ibid.[5]

In Weston, the Supreme Court stated that the trial court is to follow the following procedure in conducting its review:

> At the outset of the [court] hearing, therefore, orderly and logical procedure calls for introduction through the testimony of the applicant of his application for the identification card, the rejection thereof and the reasons given by the Chief, if any. At this point he may be subjected to cross-examination by counsel for the

---

[4] Appellant complains that there were procedural deficiencies during the review process conducted by the detective and the chief. However, under Weston, the trial court's de novo hearing "compensate[d] constitutionally" for any procedural mistakes made by these officials. Id. at 45.

[5] Appellant argues that the judge erred by considering the chief's prior expertise in reviewing gun permit applications. Based on Weston, we conclude that this argument is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Chief. Thereafter, the Chief should proceed with the evidence on which his denial was predicated. Ordinarily, this would include presentation of his own testimony, that of members of the police department who made the investigation and furnished reports to the Chief, any available lay or professional persons who furnished information which influenced the action taken by the Chief, and any admissible documentary evidence which played a part in the adverse decision. Upon completion of the Chief's proof, the applicant may offer relevant rebuttal testimony.

[Id. at 46 (emphasis added).]

The Court also recognized in Weston that the usual rules of evidence barring hearsay testimony are not necessarily controlling in an appeal from the denial of an application for a gun purchaser permit. Id. at 50. "However, a decision in such an appeal 'cannot be based upon hearsay alone.'" In re Dubov, 410 N.J. Super. 190, 202 (quoting Weston, 60 N.J. at 51). "[T]here must be a residuum of legal and competent evidence in the record to support it." Ibid. If this standard is not met, the denial of a gun permit application should be reversed. Id. at 202-03.

Here, the State solely relied upon hearsay evidence in support of its denial of appellant's application. The only witnesses who testified, the detective and the chief, based their accounts entirely upon what was contained in written records concerning appellant's arrests, the complaints filed against him, and the

alleged comments made by his three character references. No one personally familiar with the specific facts concerning the incidents contained in those records testified to corroborate them or subjected themselves to the crucible of cross-examination concerning these incidents. The State did not call any of the character references to provide competent evidence concerning the positions they were taking with regard to appellant's application even though <u>Weston</u> plainly states that such witnesses should ordinarily be called when available.

Appellant did nothing to corroborate the State's allegation that he engaged in any improper conduct during his testimony. He testified that none of the allegations that led to his arrests were true and, as a result, the matters were dismissed. Indeed, the detective admitted that the "allegations" made against appellant were "unproven." Significantly, the judge failed to discuss appellant's testimony in his decision, make any credibility determinations concerning it, or adequately address the <u>Weston</u> residuum rule issue raised by appellant.

Because the hearing was not conducted in conformance with <u>Weston</u>, we reverse the judge's denial of appellant's application, and remand for a new evidentiary hearing conducted in accordance with the procedures set forth in that

seminal opinion.[6] Nothing within this opinion forecasts any views on the merits of applicant's permit application nor on the question of whether the State may be entitled to prevail after a fuller record is developed and presented to the trial court as mandated by Weston. We say no more than that the issues were not fully ripe for decision.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] We reject appellant's request that the case be assigned to a different judge on remand. An appellate court's authority to direct that a case be assigned to a new judge "may be exercised when there is a concern that the trial judge has a potential commitment to his or her prior findings." Graziano v. Grant, 326 N.J. Super. 328, 349 (App. Div. 1999). However, this authority should be exercised "sparingly[.]" Id. at 350. "In addition, consideration must be given to the fact that, to some extent, it would be counterproductive to require a new judge to acquaint himself or herself with the litigation." Ibid. Here, we discern no basis to remand this matter to a different judge. Thus, we direct the Assignment Judge to assign the case as he or she sees fit.

A-1583-18T4