**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0910-20

IN THE MATTER OF THE
DENIAL OF THE APPLICATION
OF M.I. FOR A FIREARMS
IDENTIFICATION CARD.

_____

Submitted December 8, 2021 – Decided February 2, 2022

Before Judges Hoffman, Whipple, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. GPA-0002-20.

Wronko Loewen Benucci, attorneys for appellant M.I. (James R. Wronko, of counsel and on the brief).

Renee Robeson, Hunterdon County Prosecutor, attorney for respondent State of New Jersey (Jeffrey L. Weinstein, Assistant Prosecutor, on the brief).

PER CURIAM

Petitioner M.I. appeals from an order denying his firearms appeal. Petitioner applied for a Firearms Purchaser Identification Card (FPIC) in November 2019. In January 2020, the Tewksbury Township Police

Department denied the application. The Superior Court denied petitioner's appeal in December 2020. We affirm.

The record informs us that petitioner applied for the FPIC with the Tewksbury Police Department on November 1, 2019. On January 3, 2020, Chief Timothy P. Barlow denied petitioner's application citing the public health, safety, or welfare pursuant to N.J.S.A. 2C:58-3(c)(5). Petitioner appealed and the trial court heard the matter de novo on September 23, 2020.

There, Barlow testified for the state and petitioner testified on his own behalf. Barlow worked for the Tewksbury Police Department and served as Chief for two years, where he reviewed approximately 150 FPIC applications. This was his first denial. Although Barlow never personally met petitioner, he reviewed petitioner's application and determined it should be denied.

Before Barlow reviewed the application, the police searched several databases for relevant information. When petitioner applied for his FPIC card, he, like every applicant, submitted fingerprints to the New Jersey Firearms Application and Registration System (FAR). The fingerprints were checked against state criminal history and mental health records. The police then performed a name search against a nationwide criminal database, verified the applicant's residency and employment, checked motor vehicle records, and

searched the Automated Traffic System (ATS), Automated Criminal System (ACS), juvenile central registry, domestic violence registry, and local databases used by municipal courts. Outside of the automated searches, Detective Sergeant Hanft performed additional searches and completed the department's checklist for FPIC applicants.

After Hanft finished his checks, Barlow reviewed petitioner's application. Barlow noted four municipal court matters: three involving ordinance violations at petitioner's restaurant, two of which he pleaded guilty to and one that was dismissed; and one citizen complaint from an employee at petitioner's restaurant in July 2013. The latter complaint accused petitioner of grabbing the employee's arm when he approached petitioner's table, yelling profanities at the employee, and following the employee around the restaurant. This citizen complaint was dismissed.

Barlow noted two domestic disputes in the Tewksbury database. First, in December 2017, petitioner's then-girlfriend said petitioner choked her, so her sister called Mount Olive police. Petitioner's then-girlfriend recanted the allegation via text message to her sister, saying she was okay. Mount Olive forwarded the call to the Tewksbury Police Department, which arrived with two units. Upon arrival, officers met with petitioner and his then-girlfriend,

and he denied anything physical but admitted they were having a verbal disagreement. The officer noted petitioner had alcohol on his breath. The alleged victim told officers petitioner did not choke her, and she just wanted to go home, but petitioner would not let her because she had been drinking. There were no visible injuries, both parties signed the victim notification form and declined to request a restraining order. Petitioner ripped up his copy of the victim notification form.

The second domestic event occurred on January 23, 2019. Barlow recalled reading that report within seventy-two hours of that date; thus, Barlow heard about that incident before reviewing the FPIC application. That night, the Tewksbury police received a phone call about a possible assault at petitioner's home. The officers met the alleged victim in Oldwick, after she had left petitioner's home. The victim looked upset, had a scratched and swollen lip, and stated petitioner had assaulted her while she was at his home. The alleged victim and the police went back to headquarters for more details about the incident and to photograph her injuries.

Petitioner and the alleged victim had been at his house drinking wine and watching movies; she recalled him drinking multiple bottles. The victim reported she had gone to bed, but he had stayed up a bit longer. Then, he came

4

up the stairs and started making "obscene" comments towards her, shook her by the shoulders, and struck her in the face. While she ran away, petitioner chased her, allegedly catching her, and pushing her down the stairs. She stated he then chased her, punching and kicking her as they ran. The victim was attempting to get to her car outside, through the garage, where she fell. The victim admitted the conditions were slippery. She then got into her car and called the police.

Barlow also reviewed petitioner's driving record and abstract. Petitioner had numerous motor vehicle violations, including a Driving While Intoxicated (DWI), five speeding tickets, one for disregarding a stop sign, a seatbelt violation, failure to follow a traffic control device, and unsafe operation. Petitioner's license was suspended three times, once for too many accumulated points, once for the DWI, and once for an unpaid insurance surcharge. Barlow concluded petitioner had a long history of disregarding motor vehicle laws in New Jersey.

After considering petitioner's whole application, Barlow denied granting him an FPIC, concluding that doing so would not be in the best interest of the health, safety, and welfare of the general public. Petitioner sent Barlow a

5

letter on January 17, 2020, indicating he would appeal the denial of his application.

During cross-examination at the September 23, 2020, hearing, Barlow conceded petitioner's license had not been suspended since 1991; thus, between 2010 and 2020, petitioner only failed to wear a seatbelt in 2013, operated a vehicle unsafely in 2015, and failed to observe a traffic control device in 2019. Barlow also acknowledged he did not personally meet with any of the victims of the domestic disputes and that the officers could not tell if the second victim's photographed injuries were caused by petitioner, or from her falling on ice.

Barlow never spoke with petitioner, over the phone or in person, regarding his FPIC application. Barlow made his decision based on the totality of the circumstances, while considering the general welfare of the public. The court affirmed the denial on September 24, 2020.

Three weeks later, petitioner moved to vacate the court's denial, after learning that another lawyer at the law firm representing petitioner was representing the judge's niece in an unrelated matter. Petitioner's counsel asserted a conflict could exist because he had cases before the judge, and his firm was representing her niece. Counsel had not informed petitioner of any

6

potential conflict prior to the FPIC denial appeal hearing and asserted petitioner would have requested a different judge, if he knew.

The court denied the motion and issued a written decision on the same day. This appeal followed.

Petitioner first argues that the trial court erred by denying his motion to vacate the decision because the trial court should have recused itself on its own motion. Petitioner alleges an appearance of impropriety because the judge heard this FPIC appeal brought by the firm representing the judge's niece in an unrelated matter. We disagree.

"The Judiciary derives its authority from the State Constitution but earns the public's confidence through acts of unquestioned integrity." DeNike v. Cupo, 196 N.J. 502, 506; see also In re Advisory Letter No. 7-11 of the Sup. Ct. Advisory Comm., 213 N.J. 63, 70 (2013) (recognizing that "[c]ertainly, the public will lose faith in our justice system if it believes that judges are hearing cases despite conflicting interests that strain their ability to be impartial"). Rule 1:12-2 authorizes a party to file a motion seeking to disqualify the judge presiding over the case. "The motion for disqualification must state the reasons supporting the moving party's position, [R. 1:12-2], and must be made

directly to the judge presiding over the case." P.M. v. N.P., 441 N.J. Super. 127, 140 (App. Div. 2015) (citing State v. McCabe, 201 N.J. 34, 45 (2010)).

Pursuant to Rule 1:12-1(a), a judge is disqualified from sitting in any matter if the judge "is by blood or marriage the second cousin of or is more closely related to any party to the action[.]" Under Rule 1:12-1(g), the judge is disqualified "when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." Canon 3(C)(1) of the Code of Judicial Conduct provides that "[a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ." The rules, thus, "address actual conflicts and bias as well as the appearance of impropriety." McCabe, 201 N.J. at 43. The standard to assess whether a judge's personal behavior creates an appearance of impropriety is whether "an individual who observes the judge's personal conduct [would] have a reasonable basis to doubt the judge's integrity and impartiality[.]" In re Reddin, 221 N.J. 221, 223 (2015).

This standard to assess defendant's request for recusal was set forth in DeNike: "[w]ould a reasonable, fully informed person have doubts about the judge's impartiality?" 196 N.J. at 517. The standard calls for an

A-0910-20

individualized and objective consideration of the facts in a case.  See id. at 516-18.  DeNike did not set forth any bright line rules.  See ibid.  It noted, however, the record did not show that the judge "conducted the trial or post-trial proceedings in a biased or unfair way.  To be clear, though, 'it is not necessary to prove actual prejudice on the part of the court' to establish an appearance of impropriety; an 'objectively reasonable' belief that the proceedings were unfair is sufficient."  Id. at 517 (quoting State v. Marshall, 148 N.J. 89, 279 (1997)).  Still, it is inappropriate for a judge to withdraw from a case "unless the alleged cause of recusal is known by [the judge] to exist or is shown to be true in fact."  Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 358 (App. Div. 1986).

The decision to grant or deny the motion for disqualification rests entirely within the sound discretion of the trial judge.  Chandok v. Chandok, 406 N.J. Super. 595, 603 (App. Div. 2009).  "We review de novo whether the proper legal standard was applied" in deciding the motion.  McCabe, 201 N.J. at 45.

Turning to this case, the judge's niece was not a party to the action. Furthermore, a fully informed, reasonable person would not view the judge's niece being represented by the same firm as petitioner's counsel in an unrelated

A-0910-20

matter as creating an issue of partiality. DeNike, 196 N.J. at 517. Thus, we discern no error in the trial court's declining to recuse itself.

Petitioner next argues that the trial court erred denying his appeal of the denial of his FPIC application because (1) Barlow's testimony and the hearsay reports were insufficient evidence for the trial court to affirm the denial; and (2) Barlow failed to grant petitioner a pre-denial meeting. We reject both arguments.

An applicant is not automatically entitled to receive an FPIC card. In re Dubov, 410 N.J. Super. 190, 198 (App. Div. 2009). N.J.S.A. 2C:58-3(c)(5) states, "[n]o handgun purchase permit or [FPIC] shall be issued . . . [t]o any person where the issuance would not be in the interest of the public health, safety or welfare . . . ." This FPIC disqualifier "provision is 'intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest.'" In re Osworth, 365 N.J. Super. 72, 79 (App. Div. 2003) (quoting Burton v. Sills, 53 N.J. 86, 91 (1968)). "This broadly worded disqualification criterion eludes precise definition. We are satisfied, however, that it must be liberally construed . . . ." State v. Cordoma, 372 N.J. Super. 524, 534 (App. Div. 2004).

"[A] judicial declaration that [a petitioner] poses a threat to the public health, safety or welfare involves, by necessity, a fact-sensitive analysis[.]" In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 505 (2016) (quoting Cordoma, 372 N.J. Super. at 535).

> Ordinarily, [we] should accept a trial court's findings of fact that are supported by substantial credible evidence. Deference to a trial court's fact-findings is especially appropriate when the evidence is largely testimonial and involves questions of credibility. Thus, [we] should not disturb a trial court's fact-findings unless those findings would work an injustice.
>
> [In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997) (internal citations omitted).]

Thus, we reject petitioner's argument that Barlow's testimony and the hearsay reports on which he relied upon were insufficient evidence for the trial court to affirm the denial of his FPIC.

The chief's decision to deny an application is subject to de novo review by the Law Division, which means the court "contemplates introduction of relevant and material testimony and the application of an independent judgment to the testimony by the reviewing court." Weston v. State, 60 N.J. 36, 45 (1972). The police chief bears the burden of establishing the existence of good cause for the denial by a fair preponderance of the evidence. Id. at 46.

A-0910-20

In evaluating the facts and the reasons given for rejection, "the court should give appropriate consideration to the Chief's investigative experience and to any expertise he appears to have developed in administering the statute." Ibid. Application "review must be practical as well as responsible to the public." In re Application of Clark, 257 N.J. Super. 152, 154 (Law Div. 1992).

The trial court may consider hearsay evidence, provided its findings are not entirely based upon hearsay evidence. Weston, 60 N.J. at 51. Evidence that ordinarily would be excludable as hearsay may be admissible in a gun permit hearing if it is "of a credible character—of the type which responsible persons are accustomed to rely upon in the conduct of their serious affairs . . . ." Ibid.; see also Dubov, 410 N.J. Super. at 202. Hearsay evidence must, however, be corroborated by substantive and competent proof. Weston, 60 N.J. at 51; see also In re Z.L., 440 N.J. Super. 351, 358 (App. Div. 2015) (holding that hearsay from police reports was admissible where the petitioner corroborated their contents with his in-court testimony).

The trial court's findings must be supported by a residuum of legally competent evidence. Ibid.; see also In re Toth, 175 N.J. Super. 254, 262 (App. Div. 1980). "The residuum rule does not require that each fact be based on a residuum of legally competent evidence but rather focuses on the ultimate

12

finding or findings of material fact." Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 359 (2013). If this standard is not met, the denial of a gun permit application should be reversed. See Dubov, 410 N.J. Super. at 202-03.

Here, there was ample competent evidence in the record for the court to affirm the denial of petitioner's FPIC application. The trial court considered petitioner's testimony, Barlow's testimony, and the following items: petitioner's application; checklists for reviewing petitioner's background; police incident reports from Red Bank and Tewksbury, photos, and a victim statement from the various police encounters; petitioner's driving abstract; and Barlow's letter rejecting petitioner's application. Barlow testified that "in reviewing the totality of the circumstances, it was his opinion that it would not be in the best interest of the health, safety, and welfare of the public to approve [petitioner's] application, especially when considering that alcohol was involved in the two incidents at the [petitioner's] residence." The court found Barlow's testimony credible.

The court made the following additional findings. Petitioner's testimony corroborated the police report, particularly that the petitioner "engaged in a verbal argument with an intimate partner while intoxicated, resulting in a call

13

to the police." The court added that this incident, "coupled with [petitioner]'s act of ripping up the Victim Notification Form in front of the officers, causes this court to question [petitioner's] ability to practice self-control." The court thus found that petitioner "demonstrated a pattern of inability to control his anger while intoxicated. In both instances, whether verbal or physical, the arguments in each case had risen to the level that law enforcement was required to intervene." The court did not find that applicant's driving record alone was sufficient to affirm the denial of the FPIC. The court did find, however, that petitioner's "driving record further illustrates a lack of control and a potential attitude of disrespect for the law."

Because petitioner's and Barlow's testimony corroborated the hearsay evidence and petitioner did not dispute the contents of the police reports, the trial court's findings are not entirely based on hearsay evidence and are supported by a "residuum of legal and competent evidence." Weston, 60 N.J. at 51-52. Thus, we discern no reason to disturb the trial court's ruling.

We next reject petitioner's argument that Weston required Barlow to directly speak with him about his application. The standards for reviewing an application for a FPIC and handgun purchase permit are well-settled. A municipal police chief has the discretion, "subject to standards which have

A-0910-20

been adjudged constitutionally adequate," to grant or deny an individual's application for a handgun permit or identification card. Id. at 43; see also N.J.S.A. 2C:58-3(d). "'The function of the Police Chief as the local administrative official charged with responsibility for the original decision to grant or withhold the [FPIC] involves largely the exercise of an informal discretion,' based upon the information disclosed by a 'good faith investigation.'" In re Application of Boyadjian, 362 N.J. Super. 463, 475 (App. Div. 2003) (alteration in original) (quoting Weston, 60 N.J. at 43, 45).

When reviewing an application, a police chief must consider the interests of the community and must not make a decision that is "arbitrary, capricious or unreasonable." Boyadjian, 362 N.J. Super. at 478. After completing the investigation, if the police chief decides to deny the application, there is "no obligation to hold a trial-type hearing before doing so." Weston, 60 N.J. at 43. The applicant should, however, have "an opportunity . . . to discuss the matter with the Chief, to be informed of the reasons for the denial and to offer any pertinent explanation or information for the purpose of meeting the objections being raised." Id. at 44.

In Osworth, we emphasized the importance of a pre-hearing explanation from the chief so that an applicant has a fair opportunity to prepare his case

and arrange for witnesses. 365 N.J. Super. at 81. The purpose of the pre-decision conference "is not only to inform the applicant of the reasons for the police chief's denial, but also to afford the applicant an opportunity to convince the chief, by submission of additional information and informal discussion, to change his [or her] decision, thus obviating the need for judicial review." Dubov, 410 N.J. Super. at 200-01, n.2.

The Court in Weston, however, explained that a de novo hearing "contemplates introduction of relevant and material testimony and the application of an independent judgment to the testimony by the reviewing court." 60 N.J. at 45. Thus, a de novo hearing "compensates constitutionally for procedural deficiencies before the administrative official." Ibid. (citing Jennings v. Mahoney, 404 U.S. 25 (1971)). Here, although Barlow did not give petitioner a chance to meet and explain the reason for his denial, the de novo hearing in the trial court satisfied petitioner's procedural due process rights. Id. at 45.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-0910-20