# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4015-21

IN THE MATTER OF APPEAL
OF R.N.'S[1] APPLICATION FOR
A FIREARMS PURCHASER
IDENTIFICATION CARD AND
THREE PERMITS TO PURCHASE
A HANDGUN.

_____

Submitted June 7, 2023 – Decided August 6, 2024

Before Judges Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. PAS-0022-45.

R.N., appellant pro se (Jeff Thakker, of counsel).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Timothy Kerrigan, Senior Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

---

[1] Due to the discussion of R.N.'s temporary restraining order (TRO) issued pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, we refer to appellant and his former spouse by initials pursuant to <u>Rule</u> 1:38-3(c)(10).

FIRKO, J.A.D.

R.N. appeals from a July 29, 2022 Law Division order affirming the Wayne Township Police Chief's denial of his second application for a State Firearms Purchaser Identification Card (FPIC) and three permits to purchase a handgun. The court held the State had demonstrated that issuance of the FPIC and handgun permits "would not be in the interest of public health, safety, or welfare." N.J.S.A. 2C:58-3(c)(5). The court's order followed a denial by local Police Chief John C. McNiff (Chief). Because the court deviated from the procedures dictated in Weston v. State, 60 N.J. 36 (1972), we vacate the order and remand for a compliant hearing.

I.

We recite the facts and procedural history from the record. In 2020, R.N., who is an attorney, applied for an initial FPIC and three handgun purchase permits. In evaluating R.N.'s application, the Wayne[2] Township Police Department conducted a background check that revealed R.N. had a juvenile record. On October 16, 2020, several months after the application was submitted, Sergeant Donald Pavlak sent R.N. an email requesting to speak with him. During their conversation, Sergeant Pavlak told R.N. his application was

_____

[2] R.N. no longer resides in Wayne, which is not germane to our opinion.

A-4015-21

being withdrawn because of "certain matters" appearing on his juvenile record. According to R.N., Sergeant Pavlak told him that after R.N. expunged his record, he could reapply, and the application would be "granted." On July 14, 2021, R.N. had his juvenile record expunged. Thirteen days later, R.N. re-submitted his application for an FPIC and three handgun purchase permits.

The application form included the following two questions: (1) "Have you ever been adjudged a juvenile delinquent?" and (2) "Are you subject to any court order issued pursuant to [d]omestic [v]iolence?" R.N. responded "yes" to the first question on the application form and added "[a]s instructed, expungement entered," and responded "no" to the second question.

On September 9, 2021, while his application was pending, R.N.'s former wife, M.B., filed a complaint against R.N. pursuant to the PDVA and obtained a temporary restraining order (TRO) against R.N.[3] The complaint alleged the predicate acts of harassment and stalking. M.B. alleged she was receiving alerts on her phone that an AirTag[4] was tracking her "over the last three weeks" but

---

[3] R.N. and M.B. were divorced in December 2020.

[4] An AirTag is a tracking device developed and sold by Apple, Inc. The AirTag sends out a Bluetooth signal that can be detected by nearby devices and transmits the location of the AirTag to iCloud so the location may ultimately be seen on a map. *Air Tag*, APPLE, https://www.apple.com/airtag/ (last visited August 1, 2024).

was not registered to her. M.B. found the tracker "in a magnetic box under her bumper." She scanned the device and determined it was registered to R.N. based on the last four digits of his phone number, which matched the AirTag. M.B. had found the AirTag on September 6, 2021, and traced it to R.N. the following day. M.B. reported the matter to the police and alleged in her domestic violence complaint she was "alarmed" by R.N.'s actions.

In her complaint for the restraining order, M.B. also alleged the parties have a history of domestic violence. M.B. alleged that R.N. "has a history of controlling behavior," such as not wanting her to work, cutting off access to her credit cards, lying about money, and being verbally abusive. M.B. alleged that on one occasion during an argument, R.N. would not let her out of the car and refused to take her home. M.B. also alleged that, during an argument on another occasion, R.N. refused to give their crying young son back to her.

The Family Part judge entered a TRO, which prohibited R.N. from communicating with M.B. or her boyfriend, J.S. In addition, the TRO prohibited R.N. from possessing any firearms or other weapons, permits to carry weapons, or from having an FPIC, and ordered him to immediately surrender these items. On September 9, 2021, Wayne Township Police Officer Trevor Constabile served R.N. with the complaint and TRO. When Officer Constabile asked R.N.

if he had any weapons, R.N. answered in the negative. R.N. did not inform Officer Constabile about his pending FPIC and handgun purchase permits application. Following his receipt of the TRO, R.N. failed to contact the Wayne Township Police Department to update his application to reflect he was the defendant in a TRO that had been entered against him based on the complaint filed by his former wife.

The TRO was later withdrawn and dismissed by M.B. prior to the final domestic violence hearing date. Two months later, on November 16, 2021, the Chief denied R.N.'s application for the FPIC and handgun purchase permits. R.N. received a letter from the Chief providing his reasons for denying R.N.'s application:

> N.J.S.[A.] 2C:58-3(c)(5)[,] which states: "To any person where the issuance would not be in the interest of the public health, safety or welfare[.]"
>
> Specifically, your background check revealed an extensive criminal history as a juvenile, with a repetitive pattern of committing offenses, which would otherwise have been considered crime[s] as an adult. Additionally, you were also recently issued a [TRO] in 2021. Although it has since been dismissed, its time of issuance was in close proximity to the time of your firearms application.

The letter also advised R.N. of his right to appeal. R.N. appealed the Chief's decision to the Law Division contending the TRO was not based on

5

alleged physical violence, there was no history of physical violence with his former wife, and the Chief's reliance on a dismissed TRO was not a proper basis for denial of his FPIC and handgun purchase permits application.

On July 7, 2022, the court conducted a one-day hearing to determine whether the Chief had good cause to deny R.N.'s application. R.N. was the only witness who testified at the hearing. R.N. testified that he did not inform Officer Constabile that he had an application pending with the Wayne Township Police Department for an FPIC and three handgun purchase permits when he was served with the TRO because "[i]t didn't cross [his] mind." R.N. also testified that Officer Constabile inquired if R.N. had any weapons when he was served with the TRO, and R.N. answered in the negative. R.N. claimed he did not read the TRO because he "was pretty upset."

R.N. testified that after submitting the application under review, he called the Wayne Township Police Department between ten and twelve times for updates regarding the status of his application but never informed the police about the TRO during those phone calls or by email. R.N. testified "it slipped my mind" and it "wasn't a purposeful decision . . . I just wasn't thinking about it." R.N. admitted to being served with the TRO on September 9, 2021, and acknowledged placing the AirTag on M.B.'s car the month prior without her

permission or knowledge and leaving it there for "two to four weeks" before she found it.

R.N. testified that he placed the AirTag on M.B.'s car because he was "upset" over a "custody dispute" regarding their son. R.N. testified he has a fifty-fifty shared custody arrangement of the parties' son and became concerned when M.B. took the child to Massachusetts without his consent, which R.N. thought violated their custody agreement. In addition, R.N. testified that M.B.'s boyfriend, J.S., was in a car accident and abused drugs, and R.N. was concerned about his son's well-being and whereabouts and whether the child was with J.S.

R.N. explained he learned about his son going to an emergency room and getting stitches, but did not find out about it until after the fact when he took his child to school. R.N. testified he was concerned because he "didn't know where [his] kid was" for days at a time. R.N. testified he did not remember if those custody issues were addressed with the divorce lawyers or mediators.

R.N. testified that he didn't really think about" how placing the AirTag "would affect [M.B.]." He admitted placing the AirTag on M.B.'s vehicle in August 2021 was "not a well thought out plan" and acknowledged the AirTag was a tracking device. R.N. stated it was "an extreme action" on his part. R.N. stated he knew "it was wrong" to place the AirTag on M.B.'s car, and that he

7

was "scared" and "selfish." In defense of his actions, R.N. testified he placed the AirTag on M.B.'s vehicle because of the custody problems he experienced with her and his fear she might "disappear" with the child and J.S. R.N. stated he just needed help communicating with M.B. and was not interested in knowing her whereabouts, but was "worried" about where his son was. R.N.'s monitoring of M.B. did not end until she discovered the AirTag.

During his testimony, R.N. denied the allegations of prior domestic violence history alleged in M.B.'s complaint. However, he admitted to canceling an "emergency-use-only credit card," which he claimed she was "misusing." R.N. testified M.B. has a "multi-million dollar" trust fund and bank accounts at her disposal and therefore her allegations that he cut off access to credit cards and money were unsubstantiated. R.N. also testified that the reason he cut off M.B.'s access to credit cards was because she refused to give him receipts as he had requested, and she was only supposed to use the credit cards for emergencies.

R.N. testified he correctly answered on the application that he has never been confined or committed to a mental institution or hospital for treatment of a mental or psychiatric condition; he is not dependent on narcotics or controlled dangerous substances; and he never applied for and never had an FPIC or

handgun permit application denied or revoked in this State or any other state. R.N. testified his answers to these questions were "correct" at the time he submitted the application.

At the close of the evidence at the Law Division appeal hearing, the FPIC application, the application confirmation, the TRO complaint, the Chief's denial letter, the October 16, 2020 email from Sergeant Pavlak, the expungement order, police reports, R.N.'s driver abstract, the TRO dismissal order, and the TRO complaint were moved into evidence by the State without any hearsay or other objection raised by R.N.'s counsel. The court requested written summations and reserved decision.

The court entered an order and written statement of reasons, finding by a preponderance of the evidence that R.N.'s application was properly denied. The court's decision affirmed the Chief's determination that it would not be in the best interest of the public health, safety, or welfare for an FPIC or handgun purchase permits to be issued to R.N. pursuant to N.J.S.A. 2C:58-3(c)(5), which in pertinent part prohibits the issuance of a handgun purchase permit or FPIC "to any person who knowingly falsifies any information on the application form."

The court concluded issuance of an FPIC and three handgun permits to R.N. is against "the interest of the public health, safety, and welfare" pursuant to N.J.S.A. 2C:58-3(c)(5), and in accord with In Re Forfeiture of Pers. Weapons and Firearms Identification Card Belonging to F.M., 225 N.J. 487, 511 (2016). The court cited our Supreme Court's holding in F.M. that a court may consider the facts underlying and attendant to domestic violence complaints and TROs that are later dismissed or withdrawn, in determining whether an applicant is disqualified under N.J.S.A. 2C:58-3(c)(5). Ibid. The court relied on R.N.'s actions in placing the AirTag on M.B.'s car and monitoring her whereabouts—which he acknowledged doing at the hearing—to support the denial of R.N.'s application.

Thus, although the TRO was later dismissed by M.B., the court highlighted that R.N. admitted under oath at the hearing that he placed the AirTag tracking device on M.B.'s car. The court noted that R.N.'s conduct ultimately resulted in the issuance of a TRO against him. The court found the allegations set forth in the TRO complaint were sufficient to render R.N. subject to a disability under N.J.S.A. 2C:58-3(c), and more specifically, that the issuance of an FPIC and handgun purchase permits to R.N. would be against the public health, safety, and welfare.

"Equally concerning" to the court was its finding that R.N. failed to update his application to include the recent TRO. The court noted R.N. "should have" updated his application to apprise the Wayne Township Police Department about the pending TRO but "failed to do so" even after speaking with the police department approximately "twelve times" about the status of his application. Finally, the court emphasized that R.N. sought to obtain firearms "just days" before placing the AirTag in M.B.'s car, which "coincides" with a "general deterioration in their relationship." After considering R.N.'s testimony and the evidence, the court found that the State proved by a preponderance of the evidence that an FPIC and handgun purchase permits should not be issued to R.N.[5] This appeal followed.

On appeal, R.N. argues: (1) the court's decision was against the weight of the evidence because he denied the prior domestic violence history allegations in the TRO complaint, there were no witnesses presented to prove those allegations, and the court erroneously relied on M.B.'s prior domestic violence history allegations as evidence establishing FPIC and handgun purchase permit disqualifications; (2) the portions of the TRO complaint that R.N. acknowledged

---

[5] The court did not consider R.N.'s driver abstract in its decision because the Chief did not cite it as a reason for denial.

did not warrant disqualification under N.J.S.A. 2C:58-3(c), and the court's assertion that any domestic dispute implicates the public health, safety, or welfare was legally erroneous; and (3) there was no evidence and no finding that R.N. "knowingly" tried to hide the TRO from the Wayne Township Police, who served the TRO on him, to effect a falsification of the application. R.N. contends the court's findings were based primarily on the TRO allegations, which he denied, and he seeks a remand for a new hearing to consider only "substantiated allegations." R.N. does not challenge the constitutionality of the permit requirements.

## II.

"[A] judicial declaration that a defendant poses a threat to the public health, safety[,] or welfare involves, by necessity, a fact-sensitive analysis." F.M., 225 N.J. at 505 (quoting State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004)). In our review of a judicial determination following an evidentiary hearing, we "should accept a trial court's findings of fact that are supported by substantial credible evidence" in the record. Id. at 505-06 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997)). We will decline to "disturb the factual findings . . . of the trial judge unless . . . convinced . . . they are so manifestly unsupported by or inconsistent with the competent, relevant and

reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974) (internal quotation marks omitted).

Notwithstanding our deference to its fact findings, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A Police Chief's denial of an application for an FPIC is subject to the Law Division's de novo review. In re Osworth, 365 N.J. Super. 72, 77 (App. Div. 2003) (citing Weston, 60 N.J. at 45). "The Chief has the burden of proving the existence of good cause for the denial by a preponderance of the evidence." Ibid. "[I]n evaluating the facts presented by the Chief and the reasons given for rejection of the application, the court should give appropriate consideration to the Chief's investigative experience and to any expertise he [or she] appears to have developed in administering the statute." Weston, 60 N.J. at 46.

"Orderly and logical procedure calls for introduction through the testimony of his [or her] application for the [FPIC], the rejection thereof, and the reasons given by the Chief, if any." Ibid. Ordinarily, this includes

13

presentation of the Chief's testimony or "members of the police department who made the investigation and furnished reports to the Chief, . . . and any admissible documentary evidence which played a part in the adverse decision." Ibid. We apply these standards here.

On appeal, R.N. argues the Chief did not testify and produced no witnesses at the Law Division hearing. R.N. contends the court's findings were based on the TRO allegations, and because R.N. denied those allegations, and the Chief did not testify and produced no witnesses, "the evidence failed to preponderate in the Chief's favor." R.N. seeks a remand for a new hearing before a different judge.[6] The State responds that the court did not err because the Chief was not required to testify and R.N. otherwise "admitted to the conduct investigated by the police department."

In In re Dubov, 410 N.J. Super. 190 (App. Div. 2009), we reviewed the hearing requirement, which the Court established in Weston. Particularly given the ex parte nature and "informality of a [C]hief of [P]olice's initial consideration of an application," Dubov, 410 N.J. Super. at 200, we determined the reviewing court must conduct a de novo hearing that "'contemplates

---

[6] In the matter under review, the trial judge has since retired. Therefore, on remand, the matter will be assigned to a different judge.

introduction of relevant and material testimony and the application of an independent judgment to the testimony by the reviewing court.'" Ibid. (quoting Weston, 60 N.J. at 45).

Although the court is not bound by the Chief's determinations in its de novo review, the court must give appropriate weight to "the local interest factor to the extent legitimately reflected in the [P]olice [C]hief's denial, as well as for the [C]hief's 'investigative experience and . . . expertise[.]'" In re Application of Boyadjian, 362 N.J. Super. 463, 476 (App. Div. 2003) (quoting Weston, 60 N.J. at 46).

The Weston Court described the procedure for the hearing:

> At the outset of the County Court hearing . . . orderly and logical procedure calls for introduction through the testimony of the applicant of his [or her] application for the identification card, the rejection thereof and the reasons given by the Chief, if any. At this point he [or she] may be subjected to cross-examination by counsel for the Chief. Thereafter, the Chief should proceed with the evidence on which his [or her] denial was predicated. Ordinarily, this would include presentation of his [or her] own testimony, that of the members of the police department who made the investigation and furnished reports to the Chief, any available lay or professional persons who furnished information which influenced the action taken by the Chief, and any admissible documentary evidence which played a part in the adverse decision. Upon completion of the Chief's proof, the applicant may offer relevant rebuttal testimony.

[Weston, 60 N.J. at 46.]

When R.N. applied for his FPIC and handgun purchase permits, Weston required that the Chief testify and provide "admissible documentary evidence: that influenced his adverse decision. Id. The court here erred by deciding the appeal based only on R.N.'s testimony and documentary evidence. It was incumbent upon the court to independently determine whether R.N. is entitled to an FPIC and handgun permits. Osworth, 365 N.J. Super. at 77-78. Citing Weston, we have explained that the Chief has the burden of proving an applicant is not qualified to receive a handgun permit. Id. at 77 (citing Weston, 60 N.J. at 46). In essence, the court here reversed the burden of proof and placed it on R.N. by requiring that he disprove the facts pertinent to the domestic violence complaint filed by M.B. A remand is therefore required.

At the evidentiary hearing, on remand, the court may consider hearsay evidence, so long as there is a "'residuum of legal and competent evidence in the record'" to support the court's decision. Dubov, 410 N.J. Super. at 202 (citation omitted). Any hearsay evidence must be corroborated by substantive and competent proof. Weston, 60 N.J. at 51. And, in accordance with our decision in Dubov, the Chief must testify at the hearing in support of the requisite burden of proof. 410 N.J. Super. at 202.

Here, Chief McNiff did not testify, R.N. was not involved in any post-judgment matrimonial motions regarding custody, and there was no evidence demonstrating good cause to deviate from the course charted by the Court in Weston. Moreover, the court based its findings primarily on R.N.'s testimony regarding his past actions and hearsay contained in the TRO complaint, which was not corroborated, and was in fact denied by R.N. in his court testimony. That was error.

An application for an FPIC and handgun purchase permits is governed by N.J.S.A. 2C:58-3. The version of the statute existing when R.N. filed his application provided in pertinent part:[7]

> No person of good character and good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a handgun or a [FPIC], except as hereinafter

---

[7] In response to the United States Supreme Court's decision in N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), the Legislature amended the New Jersey firearms statutes, including N.J.S.A. 2C:58-3(c)(5), effective December 22, 2022. L. 2022, c. 131. In In re M.U.'s Application for a Handgun Purchase Permit, we held that amendments made to subsection (c)(5) were deemed to be prospective and not to apply retroactively, thus making them effective as of December 22, 2022. 475 N.J. Super. 148, 195-96 (App. Div. 2023). Since the matter under review predates December 22, 2022, we apply the law in effect at the time of the decision being appealed from, which states a handgun purchase permit and FPIC shall not be issued "[t]o any person where the issuance would not be in the best interest of the public, health, safety or welfare." N.J.S.A. 2C:58-3(c)(5).

set forth. No handgun purchase permit or [FPIC] shall be issued:

(1) To any person who has been convicted of any crime, or a disorderly persons offense involving an act of domestic violence as defined in section 3 of P.L.1991, c.261 (C.2C:25-19), whether or not armed with or possessing a weapon at the time of such offense;

. . . .

(5) To any person where the issuance would not be in the interest of the public health, safety or welfare[.]

[N.J.S.A. 2C:58-3(c).]

The statute "recognizes that the right to possess firearms is presumed, except for certain good cause."[8] In re Z.L., 440 N.J. Super. 351, 355 (App. Div. 2015) (citing N.J.S.A. 2C:58-3(c)).

N.J.S.A. 2C:58-3(c) "is 'intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest.'" Z.L., 440 N.J. Super. at 356 (quoting Osworth, 365 N.J. Super. at 79).

---

[8] On June 21, 2024, the United States Supreme Court decided the case of United States v. Rahimi, 607 U.S. ___, ___ (slip op. at 7). There, the Supreme Court held: "When an individual has been found by a court to pose a credible threat to the physical safety of another, that individual may be temporarily disarmed consistent with the Second Amendment." Id.

"[A] judicial declaration that a defendant poses a threat to the public health, safety or welfare involves, by necessity, a fact-sensitive analysis." F.M., 225 N.J. 487 at 505 (quoting Cordoma, 372 N.J. Super. at 535). The State "has the burden of proving the existence of good cause for the denial by a preponderance of the evidence." Osworth, 365 N.J. Super. at 77. On remand, the court shall consider the statutorily prescribed standard and apply the relevant case law.

The court did not comply with the Weston procedure. That failure requires that we vacate the court's order denying R.N.'s application and remand the matter to the trial court. On remand, the court shall comply with the hearing requirements imposed in Weston. We express no opinion on the merits of the denial of the application and leave that decision to the remand court. In light of our conclusion, we need not address R.N.'s remaining arguments that stem from the evidence presented at the first hearing.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4015-21